UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED
2005 JAN 26 A 9:02
U.S. DISTRICT COURT
BRIDGEPORT, CONN

JANE DOE II,

    Plaintiff,

v.

CITY OF HARTFORD,
CHIEF JOSEPH CROUGHWELL,
DEPUTY CHIEF JEFFREY FLAHERTY,
LIEUTENANT DAVID KENARY,
DETECTIVE ROBERT LAWLOR,
DETECTIVE TERRY BLAIR,
SERGEANT CHRISTOPHER LYONS,
SERGEANT FRANCO SANZO,
SALVATORE ABATEILLO,
MICHAEL BASILE,
SALVATORE GALLO, and
JESUS RIVERA,

    Defendants.

CIVIL NO. 3:01cv1026 (AHN)

RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff Jane Doe has filed a fourteen-count complaint alleging violations of federal and state law against the City of Hartford ("Hartford") and six current officers of the Hartford Police Department ("Department"): Chief Joseph Croughwell ("Chief Croughwell"), Deputy Chief Jeffrey Flaherty ("Deputy Chief Flaherty"), Lieutenant David Kenary ("Lt. Kenary"), Detective Terry Blair ("Det. Blair"), Sergeant Christopher Lyons ("Sgt. Lyons"), and Sergeant Franco Sanzo ("Sgt. Sanzo") (collectively, the "Individual Defendants"). Also named in the complaint are four former Department officers — Salvatore Abateillo ("Abateillo"), Michael Basile ("Basile"), Salvatore Gallo

1

("Gallo"), and Jesus Rivera ("Rivera") — who were prosecuted, convicted, and sentenced in federal court for sexually assaulting prostitutes.[1]  Pending before the court is the motion for summary judgment filed by Hartford and the Individual Defendants [doc. #45].  For the reasons discussed below, the motion is GRANTED in part and DENIED in part.

## FACTS

Based on its review of the summary judgment record, the court finds the following material facts are not in dispute:

During the 1990s, Doe was a drug-addicted prostitute who worked her trade in Hartford.  Beginning in 1994 and continuing through December 1998, Department Officers Basile, Gallo, Abateillo, and Rivera coerced her to perform non-consensual sexual acts under threat of arrest.

On August 5, 1998, Det. Blair and Sgt. Sanzo arrested a prostitute named Stacy Richards, took her into custody, and interviewed her.  Ms. Richards informed Sgt. Sanzo that two Hartford officers had previously forced her to have non-consensual sex with them, and that other Hartford officers had subjected city prostitutes to similar sexual abuse.  Det. Blair and Sgt. Franco reported this information to Lt. Kenary, who

---

[1] Detective Lawlor, Basile, and Gallo have been dismissed from this litigation.  Defendants Abateillo and Rivera have not moved for summary judgment.

notified his supervisor, Captain Paul Donovan, who in turn notified Asst. Chief Timothy Hogan. Lt. Kenary also conveyed this information to Sgt. John Betz of the Internal Affairs Division ("IAD"). Sgts. Betz and Sanzo informed Chief Croughwell about Richard's complaint, and Sgt. Betz began an IAD investigation soon thereafter.

On August 19, 1998, as part of the IAD investigation into Ms. Richard's complaint, Sgts. Betz and Sanzo interviewed Doe and asked whether she had ever been abused by any Department officers. In a recorded statement, Doe stated that one officer had forced her to have sexual relations on three or four occasions under threat of arrest, but she was unable to identify him.

In October 1998, the U.S. Attorney's Office, the Federal Bureau of Investigation ("FBI"), the Chief State's Attorney's Office, and the Department formed a joint task force to investigate the alleged sexual abuse of prostitutes by Department officers. On December 2, 1998, Special FBI Agent Lisa Tutty and Supervisory Inspector Michael DiLullo of the Chief State's Attorney's Office interviewed Doe as part of the task force investigation. During this meeting, Doe identified Basile and Gallo as the officers who had sexually abused her.

On December 8, 1998, Sgts. Lyons and Sanzo interviewed Doe again. During this meeting, Doe reported for the first time that Officer Rivera had sexually assaulted her on December 4 or 5,

1998. She later testified before the grand jury that this incident had occurred on November 24, 1998. On February 23, 1999, Doe was arrested for prostitution and incarcerated until September 3, 1999.[2]

As a result of the joint task force's investigation, Basile (Case No. 3:00CR59), Gallo (Case No. 3:00CR100), Abateillo (Case No. 3:99CR62), and Rivera (Case No. 3:99CR63) were prosecuted, convicted, and sentenced in federal court for sexually assaulting prostitutes between 1994 and 1998. Officer Julio Camacho, who did not abuse Doe, was also convicted of similar offenses (Case No. 3:00cr215).

## STANDARD

A Rule 56 motion for summary judgment may be granted if the court determines that the moving party is entitled to judgment as a matter of law because there are no genuine issues of material fact to be tried. See Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). The burden of showing that no genuine factual dispute exists rests on the party seeking summary judgment. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Cronin v. Aetna Life Ins. Co., 46 F.3d 196, 202 (2d Cir. 1995). After discovery, if the party against whom summary

---

[2] Doe had previously been arrested for failure to appear on October 24, 1998, and was incarcerated from that date until November 24, 1998.

4

judgment is sought "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then summary judgment is appropriate. See Lujan v. National Wildlife Fed'n, 497 U.S. 871, 883-85 (1990); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

In considering a Rule 56 motion, the court's responsibility is not to resolve disputed issues of fact, but rather to assess whether there are any factual issues to be tried, while resolving all ambiguities and drawing all reasonable inferences against the moving party. See Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 11 (2d Cir. 1986) (citing Anderson, 477 U.S. at 248; Eastway Constr. Corp. v. City of New York, 762 F.2d 243, 249 (2d Cir. 1985)). The substantive law governing a particular case identifies those facts that are material with respect to a motion for summary judgment. See Anderson, 477 U.S. at 248. A court may grant summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact . . . ." Miner v. Glen Falls, 999 F.2d 655, 661 (2d Cir. 1993) (citation omitted).

"A dispute regarding a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Aldrich v. Randolph Cent. Sch. Dist., 963 F.2d 520, 523 (2d Cir. 1992) (quoting Anderson, 477 U.S. at 248). Thus, "[o]nly when reasonable minds could not differ as to

5

the import of the evidence is summary judgment proper." <u>Bryant v. Maffucci</u>, 923 F.2d 979, 982 (2d Cir. 1991).

DISCUSSION

Doe contends that Hartford and the Individual Defendants violated, among other things, her rights guaranteed under 42 U.S.C. § 1983, the Fourteenth Amendment, and Connecticut state law.[3] All of the Individual Defendants assert that they are entitled to qualified immunity and move for summary judgment on all of Doe's claims. In addition, Hartford seeks summary judgment on Doe's <u>Monell</u> claim. All Defendants assert that Doe's substantive due process claim must also be dismissed.

I.  <u>Section 1983 Claims Against Individual Defendants</u>

Doe contends that even though the Individual Defendants did not directly participate in Rivera's sexual assault of her, they were "personally involved" as supervisory officials. As discussed below, the court agrees that a triable issue exists as to Chief Croughwell's liability, but finds that the remaining Individual Defendants are entitled to qualified immunity.

A police officer is entitled to qualified immunity from liability for his discretionary actions if either his "conduct

---

[3] The parties agree that a three-year statute of limitations period applies to the sexual assaults in this case. Thus, because Doe filed her complaint on June 5, 2001, the sole actionable incident is Rivera's sexual assault on Doe in November or December 1998. Evidence of pre-June 1998 acts of sexual assault, however, is relevant to certain aspects of Doe's claims.

does not violate clearly established statutory or constitutional rights of which a reasonable person would have known," Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982), or it was "objectively reasonable for him to believe that his actions were lawful at the time of the challenged act." Lennon v. Miller, 66 F.3d 416, 420 (2d Cir. 1995) (internal citations and quotation marks omitted). As such, qualified immunity protects government officials performing their duties from the burdens of trial and the threat of monetary liability. See Harlow, 457 U.S. at 818 (1982). Thus, a government official surrenders this immunity only where a reasonable official would have known that the action violated clearly established constitutional rights. See id. at 818-19.

As a general rule, an officer may only be held liable for damages under § 1983 when he has "personal involvement . . . in [the] alleged constitutional deprivations." Williams v. Smith, 781 F.2d 319, 323 (2d Cir. 1986) (emphasis added); see also Provost v. City of Newburgh, 262 F.3d 146, 155 (2d Cir. 2001) ("requir[ing] intentional participation in the conduct constituting a violation"). However, a supervisory official may be liable under § 1983 even if he does not directly participate in the constitutional deprivation. For example, a supervisory official may be deemed to have personal involvement if (1) he fails to remedy a wrong after learning of a violation through a report or appeal; (2) he creates a policy or custom under which unconstitutional practices occurred, or allows such a policy or

custom to continue; or (3) if he is grossly negligent in managing subordinates who cause an unlawful condition or event. See Moffitt v. Town of Brookfield, 950 F.2d 880, 886 (2d Cir. 1991). In short, "supervisor liability in a § 1983 action depends on a showing of some personal responsibility, and cannot rest on respondeat superior." Hernandez v. Keane, 341 F.3d 137, 144 (2d Cir. 2003).

1.  Det. Blair, Sgt. Lyons, Sgt. Sanzo, Lt. Kenary, and Deputy Chief Flaherty

The summary judgment record discloses that Det. Blair, Sgt. Lyons, and Sgt. Sanzo were not supervisory officials in the Department, exercised no supervisory authority over Rivera, and had no direct involvement in Rivera's sexual assault of Doe. Detective Blair's only connection in this case was carrying out the arrest of Ms. Richard on August 5, 1998 with Sgt. Sanzo. Sgt. Lyons' involvement in this case consisted of an interview of Doe that he and Sgt. Sanzo conducted in December of 1998. The sum of Sgt. Sanzo's involvement consisted of the arrest of Ms. Richard, participating in two interviews of Doe, and communicating the information obtained from these interviews to his superiors.

Similarly, Lt. Kenary and Deputy Chief Flaherty had no direct involvement in Rivera's sexual assault of Doe. Even though both officers were supervisory officials in the Department, there are no facts in the summary judgment record showing that they created or condoned an unofficial policy of

allowing officers to abuse prostitutes, or that they failed to take corrective measures to stop such abuses after receiving notice.[4] Moreover, neither Kenary nor Flaherty exercised supervisory authority over Rivera.[5] In fact, Lt. Kenary's sole connection to this case was communicating Ms. Richard's allegations to his superiors in the Department.[6]

In sum, Det. Blair, Sgt. Lyons, Sgt. Sanzo, Lt. Kenary, and Deputy Chief Flaherty are entitled to qualified immunity because they did not participate in or have any personal involvement in the alleged constitutional deprivations.

   2.   Chief Croughwell

Several disputed questions of material fact, however, preclude summary judgment on Doe's § 1983 claim against Chief Croughwell. As the head of the Department from January 1994 to January 1999, Chief Croughwell had ultimate supervisory authority over every officer under his command. Nevertheless, during his

---

[4] The court notes that Doe included only the following materials with her brief opposing summary judgment: (1) Affidavit of Doe; (2) Affidavit of Yolanda Santiago, another city prostitute who was abused by Department officers; (3) a portion of Doe's grand jury testimony; (4) portions of reports prepared by FBI agents; and (5) a report prepared by Sgt. Betz. Doe submitted no deposition transcripts or other discovery materials.

[5] Deputy Chief Flaherty was once the supervisor of Basile, but his acts of sexual misconduct in 1994 fall outside the three-year statute of limitations period.

[6] Doe did not sue either Captain Donovan or Assistant Chief Hogan.

watch, at least five Department officers were prosecuted and convicted for sexual assaulting city prostitutes. Consequently, triable issues exist as to whether Chief Croughwell was grossly negligent in managing subordinates, including Rivera, and whether he created or condoned a custom of permitting officers to engage in this type of illegal conduct. See Moffitt, 950 F.2d at 886. Moreover, although Chief Croughwell knew as early as August 1998 that Doe had accused Department officers of sexual misconduct, Rivera proceeded to sexually assault Doe approximately three months later. Thus, it is a jury question whether his failure to take corrective action promptly was sufficient to render him personally liable under § 1983 for Rivera's sexual assault. See id. Accordingly, the court denies Chief Croughwell's motion for summary judgment with respect to Doe's § 1983 claim.

II. Monell Claim Against Hartford

Next, Doe argues that Hartford's failure to adequately supervise its officers, including Rivera, constituted deliberate indifference to Doe's constitutional rights and makes Hartford liable for Rivera's sexual assault of her. She further asserts that a triable issue exists as to whether Hartford created or condoned a custom that enabled Department officers to sexually abuse city prostitutes abuse without fear of discipline. Based on the summary judgment record, the court agrees that a triable issue exists as to Doe's Monell claim.

It is well established that a municipality in a § 1983 action is not subject to claims based on respondeat superior or vicarious liability. See Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 166 (1993); Monell v. Department of Soc. Serv., 436 U.S. 658, 691 (1978). A municipality may only be liable "under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." Monell, 436 U.S. at 690. However, the requirements for municipal liability under Monell do "not mean that the plaintiff must show that the municipality had an explicitly stated rule or regulation." Powell v. Gardner, 891 F.2d 1039, 1045 (2d Cir. 1989). Rather, the Second Circuit has clearly held that liability may be premised on municipal inaction or omissions. See, e.g., Turpin v. Mailet, 619 F.2d 196, 201 (2d Cir. 1980) ("We see no reason why an official policy cannot be inferred from the omissions of a municipality's supervisory officials, as well as from its acts."); Fiacco v. City of Rensselaer, 783 F.2d 319, 326 (2d Cir. 1986) (holding that a municipality may be subjected to § 1983 liability where it tolerates unconstitutional acts by its employees).

To support a Monell claim based on municipal inaction, a plaintiff must demonstrate that the municipality's failure to act

is so severe that it constitutes "deliberate indifference to the rights of persons with whom the police come into contact." City of Canton v. Harris, 489 U.S. 378, 388 (1989). The phrase "deliberate indifference" means more than "simple or even heightened negligence"; it involves a "conscious disregard" on the part of municipal employers for the consequences of their actions. See Board of County Comm'rs of Bryan County v. Brown, 520 U.S. 397, 407 (1997). The plaintiff must show that the need for more or better supervision to protect against constitutional violations was obvious. See Canton, 489 U.S. at 390. It is sufficient to show that an impermissible practice was so "persistent and widespread" as to constitute "a custom or usage with the force of law." Sorlucco v. New York City Police Department, 971 F.2d 864, 870 (2d Cir. 1992) (citation omitted).

In this case, the facts surrounding Rivera's sexual assault of Doe create a triable issue as to whether Hartford's failure to supervise its officers constituted "deliberate indifference" to Doe's constitutional rights.[7] Canton, 489 U.S. at 388. The summary judgment record, particularly the convictions of Rivera and four other officers for committing repeated sexual assaults on prostitutes over a five-year period, reveals that Department officers engaged in a pattern of misconduct and abused their

---

[7] Doe's complaint also includes a claim against Hartford based on respondeat superior. This cause of action is foreclosed by established law. See, e.g., Monell, 436 U.S. at 689 (§ 1983 liability may not be premised upon respondeat superior).

positions of trust.  Although Hartford contends that it duly investigated all complaints of sexual misconduct that were reported between January 1993 and December 1998, the act of receiving and investigating complaints does not vitiate Hartford's responsibility to supervise its officers adequately. To the contrary, the fact that so many officers engaged in this type of sexual assault for such a substantial period of time would enable a reasonable jury to infer that upper-level Department officials had an informal policy of condoning this misconduct.  See Turpin, 619 F.2d at 201.  Thus, because the facts create a triable issue as to whether the officers' sexual abuse of prostitutes was so "persistent or widespread" as to constitute "a custom or usage with the force of law" within the Department, see Sorlucco, 971 F.2d at 870, the court finds that a triable issue exists as to Doe's Monell claim against Hartford.

III. Substantive Due Process Claim

Next, Doe contends that her substantive due process claim against the Defendants should survive summary judgment because the record supports her theory that the Defendants affirmatively created or increased the danger posed to her by Rivera.  The court disagrees and finds that no triable issue exists as to this claim.

As a general rule, "a [s]tate's failure to protect an individual against private violence . . . does not constitute a

13

violation of the Due Process Clause." DeShaney v. Winnebago County Soc. Servs., 489 U.S. 189, 196 (1989) (finding that Due Process Clause "generally confer[s] no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty or property interests"). However, the Second Circuit has found in very limited circumstances that state actors may be liable under a substantive due process theory if they affirmatively assist in creating or increasing the danger to a victim of crime. See Dwares v. City of New York, 985 F.2d 94, 98-99 (2d Cir. 1993) (reversing district court's dismissal of complaint alleging that police had actively conspired with white supremacists to allow the latter group to assault plaintiffs). Under this "state-created danger exception," police officers are not liable for failing to act upon reports of past violence unless they "assist[] in creating or increasing the danger to the victim." Id.

Doe's attempt to analogize the Defendants' actions to the police officers' conduct in Dwares is unavailing. In Dwares, the plaintiffs alleged that the police conspired with "skinheads" at a white supremacist rally to permit the "skinheads" to assault the plaintiffs while the police refused to intervene. See id. at 99. Here, Doe has not provided any evidence that the Defendants conspired with Rivera or took affirmative steps to facilitate his sexual abuse of her. Rather, she asserts that because the Defendants knew since August 1998 of her sexual assault

complaint, the Defendants should have taken immediate action to prevent any subsequent abuse by Department officers. This claim, however, essentially seeks to impose liability on the Defendants for the Department's failure "to act upon reports of past violence," not because the Defendants affirmatively created or increased the danger that Rivera would sexually assault Doe. See id. at 98-99. Accordingly, Doe's substantive due process claim fails as a matter of law.

IV.   Remaining State Law Claims

Finally, Defendants argue that Doe has failed to provide evidence to support her claims for negligence and negligent infliction of emotional distress. The court agrees and grants Defendants summary judgment on both claims.

    A.   Negligent Infliction of Emotional Distress

The Connecticut Supreme Court has held that to establish a claim of negligent infliction of emotional distress, the plaintiff must prove the following elements: "(1) the defendant's conduct created an unreasonable risk of causing the plaintiff emotional distress; (2) the plaintiff's distress was foreseeable; (3) the emotional distress was severe enough that it might result in illness or bodily harm; and (4) the defendant's conduct was the cause of the plaintiff's distress." Carrol v. Allstate Ins. Co., 262 Conn. 433, 444 (2003). Doe has not submitted any evidence showing that the Defendants' conduct, as opposed to

Rivera's sexual assault, was the proximate cause of her emotional distress. Thus, even assuming that Doe could satisfy the first three elements of the tort, there is no evidence that would support this key element. Accordingly, the court grants the Defendants summary judgment on this claim.

B.   Negligence Based on Imminent-Harm Exception

Finally, Doe's claim against the Defendants for negligence fails as a matter of law. Connecticut law provides that when a public official's duty to act involves the exercise of discretion, the official enjoys governmental immunity when he negligently fails to act. See Gordon v. Bridgeport Housing Authority, 208 Conn. 161, 167 (1988). An exception to this general rule is when an officer's failure to act would likely subject an "identifiable person to imminent harm." See Purzycki v. Fairfield, 244 Conn. 101, 108 (1998). In this case, however, Doe has not submitted any evidence demonstrating that she feared a sexual assault by Rivera was imminent or likely; that she made the Defendants or any Department officer aware that she was concerned about Rivera; or that she requested the Department or any law enforcement agency to protect her from Rivera. In short, the summary judgment record does not provide a factual basis for concluding that Doe was an identifiable person subject to imminent harm under Connecticut law. Accordingly, the court grants the Defendants summary judgment on Doe's negligence claim.

CONCLUSION

For the foregoing reasons, the motion for summary judgment [doc. #45] is DENIED with respect to Doe's § 1983 claim against Hartford and Chief Croughwell. However, the motion for summary judgment is GRANTED with respect to Doe's § 1983 claims against Defendants Deputy Chief Flaherty, Lt. Kenary, Det. Blair, Sgt. Lyons, and Sgt. Sanzo; her substantive due process claims against all Defendants; and her claims for negligence and negligent infliction of emotional distress against all Defendants.

SO ORDERED this 25 day of January, 2005, at Bridgeport, Connecticut.

Alan H. Nevas
United States District Judge