IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

JANE DOE II                    :        CIVIL ACTION
                               :        3:01-CV-1026 (AHN)

V.                             :

CITY OF HARTFORD, ET AL        :        FEBRUARY 7, 2005

**MEMORANDUM OF LAW IN SUPPORT OF**
**THE CITY OF HARTFORD'S AND CHIEF JOSEPH CROUGHWELL'S**
**MOTION FOR RECONSIDERATION**

James J. Szerejko, Esq.
CT Fed. Bar No. 04326
**HALLORAN & SAGE LLP**
One Goodwin Square
225 Asylum Street
Hartford, CT  06103
Tel:  (860) 522-6103
Fax: (860) 548-0006

Counsel for Co-Defendants,
City of Hartford and
Chief Joseph Croughwell

**TABLE OF CONTENTS**

**PAGE**

PRELIMINARY STATEMENT ............................................................................................ 1

BACKGROUND ............................................................................................................. 1

    I.    THE PLAINTIFF'S OPPOSITION TO CHIEF
        CROUGHWELL'S AND HARTFORD'S MOTION
        FOR SUMMARY JUDGMENT ............................................................................ 1

    II.    THE JANUARY 26, 2005 RULING ..................................................................... 1

STANDARD OF REVIEW ............................................................................................... 3

ARGUMENT ................................................................................................................... 3

    I.    THE COURT ERRED BY DENYING CHIEF
        CROUGHWELL'S MOTION FOR SUMMARY
        JUDGMENT ...................................................................................................... 3

        A.    The Court Overlooked The Case Law Governing
            Supervisory Liability And Its January 26 Ruling
            Constituted Error Under That Case Law ................................................ 3

            1.    Supervisory Liability:  General Principles ...................................... 5

            2.    Second Circuit and District of Connecticut
                Case Law on Supervisory Liability Support the
                Entry of Summary Judgment .......................................................... 6

            3.    The Court's Supervisory Liability Analysis was
                in Error ........................................................................................... 9

                a.    The HPD's Investigation of Citizens'
                      Complaints in General ........................................................ 9

                b.    The Investigation of the Plaintiff's
                      August 19, 1998 Complaint .............................................. 10

                c.    The Investigations by the HPD in Response
                      to Citizens' Complaints Requires the Entry
                      of Summary Judgment in Favor of Chief
                      Croughwell and Hartford ................................................... 13

B.  The Court Erred By Failing To Address Chief
    Croughwell's Qualified Immunity Defense And He
    Is Entitled To Summary Judgment Under That Defense ........................... 18

    1.  Qualified Immunity:  General Principles ....................................... 18

    2.  The Claims Against Chief Croughwell Are
        Barred by Qualified Immunity ....................................................... 20

II.  THE COURT ERRED BY DENYING HARTFORD'S
     MOTION FOR SUMMARY JUDGMENT ............................................................ 21

    A.  The Court Overlooked The Case Law Governing
        Municipal Liability And The January 26 Ruling Is In
        Error Under That Case Law ................................................................... 21

        1.  The Standard for Municipal Liability under the
            Supreme Court Case Law ...................................................... 22

        2.  Second Circuit Case Law on Municipal Liability
            Supports the Entry of Summary Judgment ........................... 25

            a.  Failure to Train ........................................................ 26

            b.  Failure to Supervise/Investigate/Discipline ........... 28

        3.  Deliberate Indifference ........................................................ 29

    B.  The Court Erred In Its Application Of The Standard
        Governing Municipal Liability Under § 42 U.S.C. 1983 ........................ 30

    C.  The Court Failed To Apply The Common Sense Rule
        As Mandated by Walker ...................................................................... 34

IV.  THE CASE LAW RELIED UPON BY THE COURT
     SUPPORTS THE GRANTING OF CHIEF CROUGHWELL'S
     AND HARTFORD'S SUMMARY JUDGMENT MOTION ............................... 36

V.  THE CASE LAW ADDRESSING ALLEGATIONS OF
    SEXUAL MISCONDUCT SUPPORT THE GRANTING OF
    CHIEF CROUGHWELL'S AND HARTFORD'S MOTION
    FOR SUMMARY JUDGMENT ...................................................................... 38

CONCLUSION ........................................................................................................... 40

## PRELIMINARY STATEMENT

The co-defendants, Chief Joseph Croughwell and the City of Hartford, submit this

memorandum of law in support of their motion for reconsideration of the Court's January 26,

2005 Ruling which denied their motion for summary judgment. For the reasons set forth below,

the Court should grant reconsideration and enter summary judgment in favor of Chief

Croughwell and Hartford.

## BACKGROUND

### I.     THE PLAINTIFF'S OPPOSITION TO CHIEF CROUGHWELL'S AND HARTFORD'S MOTION FOR SUMMARY JUDGMENT

As the January 26 Ruling noted, the plaintiff's evidence in opposition to the defendants'

motion for summary judgment consisted of: (1) the plaintiff's affidavit, (2) the affidavit of

Yolanda Santiago, (3) a portion of the plaintiff's grand jury testimony, (4) portions of FBI

reports, and (5) a report prepared by Sergeant Betz of the Hartford Police Department ("HPD").

(1/26/05 Ruling, at 9 n.4) The plaintiff submitted no evidence regarding the training,

supervision, investigatory or disciplinary procedures, policies or customs employed by the HPD,

let alone evidence of any alleged deficiencies in those processes. Moreover, significant portions

of the plaintiff's and Santiago's affidavits were stricken by an endorsement order issued on

October 16, 2003. The plaintiff's opposition memorandum was largely comprised of conclusory

allegations.

### II.    THE JANUARY 26, 2005 RULING

At the outset of its analysis, the January 26 Ruling noted that because of the statute of

limitations, the "sole actionable incident is Rivera's sexual assault on [the plaintiff] in November

or December 1998." (1/26/05 Ruling, at 6 n.3)

With regard to Chief Croughwell, the Court concluded that triable issues existed "as to

whether Chief Croughwell was grossly negligent in managing subordinates, including Rivera,

and whether he created or condoned a custom of permitting officers to engage in this type of illegal conduct." (Id. at 10)  It reached this conclusion based exclusively on the fact that "at least five Department officers were prosecuted and convicted for sexually assaulting city prostitutes" during the five years that Chief Croughwell held his position. (Id. at 9-10)

The Court also concluded that a jury question existed as to whether Chief Croughwell's "failure to take corrective action promptly was sufficient to render him personally liable under § 1983 for Rivera's sexual assault." (Id. at 10)  The court reached this conclusion based exclusively on its finding that "although Chief Croughwell knew as early as August 1998 that Doe had accused Department officers of sexual misconduct, Rivera proceeded to sexually assault Doe approximately three months later." (Id.)  The January 26 Ruling did not address Chief Croughwell's arguments regarding qualified immunity.

With regard to Hartford, the Court found as follows:

> In this case, the facts surrounding Rivera's sexual assault of Doe create a triable issue as to whether Hartford's failure to supervise its officers constituted 'deliberate indifference' to Doe's constitutional rights….The summary judgment record, particularly the convictions of Rivera and four other officers for committing repeated sexual assaults on prostitutes over a five-year period, reveals that Department officers engaged in a pattern of misconduct and abused their positions of trust.  Although Hartford contends that it duly investigated all complaints of sexual misconduct that were reported between January 1993 and December 1998, the act of receiving and investigating complaints does not vitiate Hartford's responsibility to supervise its officers adequately.  To the contrary, the fact that so many officers engaged in this type of sexual assault for such a substantial period of time would enable a reasonable jury to infer that upper-level Department officials had an informal policy of condoning this misconduct. … Thus, because the facts create a triable issue as to whether the officers' sexual abuse of prostitutes was so 'persistent or widespread' as to constitute 'a custom or usage with the force of law' within the Department, … the court finds that a triable issue exists as to Doe's Monell claim against Hartford.

(Id. at 12-13 (footnote and citations omitted))

2

## STANDARD OF REVIEW

The reconsideration of a ruling is appropriate when there is an intervening change in the controlling law, new evidence, or the need to correct a clear error of law or to prevent a manifest injustice. United Technologies Corp. v. American Home Assur. Co., 237 F.Supp.2d 168, 170-71 (D. Conn. 2001); Rubin v. Hirschfeld, 2001 WL 34152407, at *1 (D. Conn. Nov. 8, 2001). It is also appropriate where the court has overlooked case law or other matters. See United States v. All Assets of Blue Chip Coffee, Inc., 882 F.Supp. 45, 46 (E.D.N.Y. 1995).

## ARGUMENT

### I.    THE COURT ERRED BY DENYING CHIEF CROUGHWELL'S MOTION FOR SUMMARY JUDGMENT

#### A.    The Court Overlooked The Case Law Governing Supervisory Liability And Its January 26 Ruling Constituted Error Under That Case Law

Contrary to the Court's analysis, (1/26/05 Ruling, at 10), under the governing case law, the fact that a subordinate violates a citizen's constitutional rights does not by itself create an issue of fact on whether that subordinate's supervisor was grossly negligent in managing his subordinates. Nor does the subordinate's violation by itself create a question of fact on whether the supervisor created or condoned a custom of permitting subordinates to violate constitutional rights. Moreover, the court's question about "whether [Chief Croughwell's] failure to take corrective action promptly was sufficient to render him personally liable under § 1983 for Rivera's sexual assault" is irrelevant under the governing case law and has no basis in the record. A review of the record reveals that it is undisputed that upon being informed of Stacy Richard's complaint, Chief Croughwell authorized an investigation immediately and assigned a sergeant to the best suited division to handle that investigation.

Even assuming for the sake of argument that the record contained some basis to criticize Chief Croughwell's handling of the complaints in August 1998, as a matter of law, such criticism

3

is not a basis for imposing liability under § 1983. It is respectfully submitted that the Court's analysis is inconsistent with the governing case law. Under the Court's theory, no supervisor would be entitled to summary judgment on a § 1983 claim. It is undisputed that Chief Croughwell did not have "notice" or "knowledge" of the problem until Richard's complaint in August 1998.[1] Neither Richard nor the plaintiff identified any officer in August 1998. Officer Rivera was not identified by the plaintiff until after her alleged assault.

Upon being informed of Richard's complaint in August 1998, Chief Croughwell did not ignore it. To the contrary, he immediately ordered an investigation in response to it. That was all the Constitution required. It did not require Chief Croughwell to engage in personal surveillance of each Hartford police officer, of which there are hundreds. Nor did the Constitution require that he personally guard the plaintiff. Nor did it require him to conduct the investigation himself even after the U.S. Attorney's Office and the FBI took charge. Thus, contrary to the Court's analysis, the issue of what "more" a supervisor could have done is irrelevant. The Supreme Court confirmed this in City of Canton v. Harris, 489 U.S. 378, 392 (1989) and the Second Circuit confirmed it in Poe v. Leonard, 282 F.3d 123, 145-46 (2d Cir. 2002).

Chief Croughwell's ordering of an investigation and seeking of assistance from state and federal officials was more than proper and precludes a finding of deliberate indifference or gross negligence. Absent such misconduct the plaintiff's § 1983 claim against Chief Croughwell fails as a matter of law.

---

1/    Hayut v. State Univ. of N.Y., 352 F.3d 733, 754 (2d Cir. 2003) (no evidence of failure to respond after becoming aware of the alleged harassment); Zahra v. Town of Southold, 48 F.3d 674, 685 (2d Cir. 1995) (no evidence that town's actions were not genuine or that alleged inaction constituted deliberate indifference); Clarke v. Sweeney, 312 F.Supp.2d 277, 297 (D. Conn. 2004) (absent knowledge prior to events, supervisor cannot be liable for failing to act or for gross negligence in supervision).

4

As demonstrated below, an application of the standards governing supervisory liability to the undisputed facts in this case demonstrates that Chief Croughwell was entitled to summary judgment. Accordingly, the Court should reconsider the January 26 Ruling.

### 1.    Supervisory Liability: General Principles

It is well-established that a plaintiff asserting a § 1983 claim must prove the "personal involvement" of the defendant in the alleged constitutional deprivation. Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995). Neither respondeat superior or vicarious liability provide a basis for recovery under § 1983. See City of Canton, 489 U.S. at 385.

The personal involvement of a supervisor may be established by evidence that: (1) the official participated directly in the alleged constitutional violation, (2) the official, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the official created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the official was grossly negligent in supervising subordinates who committed the wrongful acts or (5) the official exhibited deliberate indifference to the rights of others by failing to act on information indicating that unconstitutional acts were occurring. Colon, 58 F.3d at 873. Thus, a plaintiff must show an affirmative link between the alleged constitutional violation and the actions by the defendants which caused the alleged violation. Poe, 282 F.3d at 140. A supervisor cannot be held liable under § 1983 merely because his subordinate commits a constitutional tort. Id.

Gross negligence is often equated with recklessness. Id. at 140 n.14. It is defined as the "kind of conduct . . . where the defendant had reason to know of facts creating a high degree of risk of physical harm to another and deliberately acts or fails to act in conscious disregard or indifference to that risk.'" Id. To demonstrate deliberate indifference, a plaintiff must show: (1) a grave risk of harm, (2) the defendant's actual or constructive knowledge of that risk, and (3) his

5

failure to take easily available measures to address the risk. Camilo-Robles v. Hoyos, 151 F.3d 1, 7 (1st Cir. 1998). This formulation correctly implies that deliberate indifference alone does not equate with supervisory liability. Id. A plaintiff must show that the supervisor had the "power and authority to alleviate [the violation]." Id. It is well-established that mere negligence is insufficient as a matter of law to state a claim under § 1983. Poe, 282 F.3d at 145. Nor can negligence amount to deliberate indifference. Brock v. Wright, 315 F.3d 158, 165 (2d Cir. 2003).

       **2.**      **Second Circuit and District of Connecticut Case Law on Supervisory Liability Support the Entry of Summary Judgment**

Poe v. Leonard, 282 F.3d 123 (2d Cir. 2002) arose out of alleged misconduct by a trooper with the Connecticut State Police ("CSP"), who surreptitiously videotaped the plaintiff undressing at the CSP training center after asking her to appear in a training video. Id. at 125. The plaintiff brought suit under 42 U.S.C. § 1983 against the trooper and his supervisor.[2] In an interlocutory appeal, the Second Circuit reversed the district court's denial of qualified immunity as to the supervisor. With regard to supervisory liability, the court recognized that a supervisor cannot be held liable under § 1983 because his subordinate committed a constitutional tort. Id. at 140. Rather, "a supervisor may be found liable for his deliberate indifference to the rights of others by failure to act on information indicating unconstitutional acts were occurring or for his gross negligence in failing to supervise his subordinates who commit such wrongful acts, provided that the plaintiff can show an affirmative causal link between the supervisor's inaction and her injury." Id.

The Second Circuit also recognized that as part of its analysis, it had to determine whether it was clearly established that the supervisor's failure to supervise the trooper more

_____

[2]    Poe was cited and discussed at pages 30, 32 and 33 of the defendants' May 6, 2003 memorandum of law. It was not cited in the January 26 Ruling.

closely would violate the plaintiff's rights "in the particularized context of the facts at hand." Id.
at 140-41. The court concluded that the plaintiff's claim against the supervisor "rest[ed] on the
concept of notice: either that [the supervisor] had notice of sufficient facts to require him to do
more or that he should have, by virtue of his supervisory position, investigated [the trooper]'s
past further before permitting him to continue with the video assignment." Id. at 141.
Consequently, the Second Circuit held that "in order for a supervisor to be held liable under
section 1983, both the law allegedly violated by the subordinate and the supervisory liability
doctrine under which the plaintiff seeks to hold the supervisor liable must be clearly
established." Id. at 126.

The Second Circuit also recognized that the governing "precedent clearly establishes that
for a supervisor to be liable under section 1983 for his failure to inquire, he must first have been
on notice that his subordinate was prone to commit some unconstitutional or unacceptable
behavior." Id. Thus, the plaintiff was required to establish facts demonstrating that the
supervisor "knew or should have known that there was a high degree of risk that [the trooper]
would behave inappropriately with women during his assignment, but either deliberately or
recklessly disregarded that risk by failing to take action that a reasonable supervisor would find
necessary to prevent such a risk, and that failure caused a constitutional injury to [the plaintiff]."
Poe, 282 F.3d at 142.[3]

The Poe court rejected the plaintiff's argument regarding the supervisor's alleged failure
to do "more." Id. at 145-46. It recognized that a plaintiff can "almost always ... point to what

---

3/    With regard to the "objectively reasonable" prong of the qualified immunity analysis, the
Second Circuit held that the "District Court erred in not conducting the legal inquiry necessitated
by the defense of qualified immunity, which requires that a court determine whether under
plaintiff's version of the facts, reasonable officers in the defendant's position could disagree as to
the legality of his actions." Id. at 146. In Poe, because reasonable officers could disagree about
whether the supervisor violated clearly established law, the Second Circuit held that there was a
second basis upon which to allow qualified immunity. Id. at 146-47.

more an officer or supervisor could have done." Id. at 145. However, "[t]hat is not the issue. Under section 1983, the issue is whether the 'more' that [the supervisor] could have done was clearly established by law at the time he acted or failed to act so that it can be said that [the supervisor] had notice that his actions or omissions rose to the level of a constitutional violation." Id.

In Hayut v. State Univ. of N.Y., 352 F.3d 733, 753 (2d Cir. 2003), the Second Circuit recently addressed the "personal involvement" requirement in the supervisory liability context:

> 'Personal involvement' is not limited to direct participation by the supervisor in the challenged conduct, but may also be established by evidence of an official's (1) failure to take corrective action after learning of a subordinate's unlawful conduct, (2) creation of a policy or custom fostering the unlawful conduct, (3) gross negligence in supervising subordinates who commit unlawful acts, or (4) deliberate indifference to the rights of others by failing to act on information regarding the unlawful conduct of subordinates.

Applying Hayut and Poe, the district court in Clarke v. Sweeney, 312 F.Supp.2d 277, 296 (D. Conn. 2004) (Droney, J.), rejected a plaintiff's claim against the Bridgeport Police Chief. Specifically, it concluded that because there was no evidence that the Chief was aware of the events proceeding the alleged constitutional deprivation, he could not be held liable for "failing to take corrective action after learning of a subordinate's unlawful conduct" or for "failing to act on information regarding the unlawful conduct of subordinates." 312 F.Supp.2d at 297. Also, because the Chief did not have knowledge of their alleged unlawful acts, the Chief could not be held liable for "gross negligence in supervising subordinates who commit unlawful acts." Id. Moreover, the Clarke court held that under the circumstances the Chief would be entitled to qualified immunity. Id. at 298.

As demonstrated below, summary judgment should have been entered on the plaintiff's claim against Chief Croughwell. It is undisputed that he took corrective action in response to Richard's August 1998 complaint. There is no evidence that he had any "knowledge" or

"notice" of any complaints that were not investigated. Nor is there any evidence regarding improper supervision, let alone deliberate indifference or gross negligence. Finally, the plaintiff has produced no evidence that Chief Croughwell condoned any improper policy or custom.

### 3.    The Court's Supervisory Liability Analysis was in Error

As demonstrated below, an application of the standards governing supervisory liability to the undisputed and unchallenged facts in this case, demonstrates that Chief Croughwell was entitled to summary judgment. Accordingly, the Court should reconsider the January 26 Ruling.

### a.    The HPD's Investigation of Citizens' Complaints in General

Between January 1993 and December 1998, there were fourteen (14) complaints or accusations of some type of sexual misconduct by Hartford police officers. (Ex. P, Dryfe Aff. ¶ 8)[4] For each complaint, an investigator from the Internal Affairs ("IAD") Major Crimes (or its predecessor Crimes Against Persons (CAPERS)), or Youth Services Divisions was assigned to investigate the allegations. (Id.) Of the fourteen (14) complaints, nine (9) involved the off-duty and private conduct of the officers. (Id.) Only one (1) of the complaints involved an allegation that a prostitute was coerced into engaging in sexual acts under threat of arrest. (Id.) The IAD investigated that complaint. (Id.) The complainant, however, refused to cooperate. (Id.) In fact, she refused to speak with the investigator. (Id.) Of the remaining thirteen (13) investigations, six (6) resulted in an officer being arrested and charged with a criminal offense. (Id.)

The seven (7) investigations where no criminal action was taken broke down as follows: one complainant could not make an identification of the perpetrator who she believed to be a police officer but was not in uniform; two investigations were closed as unfounded because the two complainants changed their testimony; one investigation did not involve criminal conduct,

---

4/    Citations to exhibits are to the exhibits attached to Hartford's and Chief Croughwell's initial and reply memoranda submitted in support of their motion for summary judgment.

but resulted in the officer being charged with conduct unbecoming an officer because he attempted to initiate a relationship with a high school student;[5] one investigation involved two off-duty police officers engaging in consensual sexual activity in a public place, and resulted in their being charged with conduct unbecoming an officer; one investigation was not sustained based on the evidence obtained; and the last investigation was closed administratively when the alleged victim denied any sexual relationship with the officer. (Id.)

### b.     The Investigation of the Plaintiff's August 19, 1998 Complaint

The record also confirms that the HPD's and Chief Croughwell's handling of the complaints regarding sexual assaults on prostitutes was proper and did not violate any constitutional rights. On August 5, 1998, Stacy Richard was arrested by Detective Terry Blair and Sergeant Franco Sanzo for prostitution. (Ex. A, Blair Aff. ¶ 4; Ex. D, Sanzo Aff. ¶ 4) After she was taken into custody, Richard informed Sanzo that two Hartford police officers had coerced her into engaging in sexual activity. (Id.) She also informed Sanzo that there might be other prostitutes with similar complaints. (Id.) Sanzo and Blair "immediately" reported Richard's complaint to their supervisor, Lieutenant David Kenary, the commander of the Vice and Narcotics Division. (Ex. A, Blair Aff. ¶ 5; Ex. D, Sanzo Aff. ¶ 5) Kenary "immediately" contacted his supervisor Captain Paul Donovan, who, in turn communicated the information to Assistant Chief of Police Timothy Hogan. (Ex. B, Kenary Aff. ¶ 6) Kenary was then instructed to provide all the information he had to Sergeant Betz of the IAD. (Id.)

On either August 5 or 6, 1998, Sergeants Sanzo and Betz informed Chief Croughwell of Richard's complaint. (Ex. C, Croughwell Aff. ¶ 3) Croughwell directed Betz to continue his investigation into Richard's complaint. (Id.) Due to the type of accusations involved, Chief Croughwell was concerned that a traditional investigation by the IAD would not be the most

---

5/     The officer resigned before the discipline could be administered. (Id.)

effective means to thoroughly investigate Richard's claim. (Id. ¶ 4) The HPD's Intelligence Division had greater investigative resources and a greater ability to investigate more sophisticated criminal conduct, especially when it involved allegations of public corruption. (Id.) Accordingly, Betz was transferred to the Intelligence Division to continue the investigation. (Id.) Moreover, Detective Blair was assigned to the Intelligence Division to assist Betz with the investigation. (Id.)

After commencing an HPD investigation, Chief Croughwell contacted the Chief State's Attorney, John Bailey, to see what assistance the State could provide with the investigation. (Ex. C, Croughwell Aff. ¶ 5) The ongoing investigation was also discussed in subsequent meetings with the Hartford State's Attorney, James Thomas, and the United States Attorney, Stephen Robinson. (Id.) Robinson offered the assistance of his office and the Federal Bureau of Investigation. (Id.) Chief Croughwell accepted Robinson's offer of assistance. (Id.) He also discussed with Robinson previous conversations with Bailey regarding a State Grand Jury to assist the investigation. (Id.) It was agreed that a joint law enforcement effort was appropriate. (Id.)

Subsequently, a joint law enforcement Task Force was created. (Id. ¶ 6) It was comprised of the United States Attorney's Office, the FBI, the Chief State's Attorney's Office and the HPD. (Id.) The United States Attorney's Office became the lead prosecuting agency and the FBI became the lead investigatory agency. (Id. ¶ 7) A federal grand jury was empaneled to assist the Task Force's investigation. (Id.) Chief Croughwell assigned Sergeants Betz and Lyons to the Task Force to assist with the investigation. (Id. ¶ 8) Detective Blair was also assigned to the Task Force. (Id.)

In connection with the HPD's investigation, on August 19, 1998, after she was identified as a prostitute who might have been a victim of an assault, Sergeants Betz and Sanzo **sought out**

11

*the plaintiff* to interview her regarding any information she had about misconduct by Hartford police officers. (Ex. D, Sanzo Aff. ¶¶ 6-7) In a recorded statement, the plaintiff informed Betz and Sanzo that she had been pressured on three or four occasions to provide sexual favors to one Hartford police officer. (Id., Ex. E, Pl.'s Statement, at 3-4) When asked if she could identify the officer, the plaintiff stated that she could not. (Id.)

On October 24, 1998, the plaintiff was arrested for failure to appear. (Ex. G, Dept. of Corrections Form RT60) She was incarcerated at the York Correctional Institute between October 26 and November 24, 1998, the date of her release. (Id.)

On December 2, 1998, the plaintiff was interviewed by an FBI agent and an inspector from the Chief State's Attorney's Office. (Ex. F, Dilullo Aff. ¶¶ 5-6) Her statement to them was memorialized in an FBI Form 302. (Id. ¶5; Ex. H, FBI Form 302) In contrast to her previous statement to Betz and Sanzo, the plaintiff indicated that she had been subjected to coerced sexual activity on several occasions by different police officers. (Ex. H) She also identified two officers by name for the first time. (Id.) Specifically, she identified Officers Michael Basile and Salvatore Gallo. (Id.) She did not identify either Officers Jesus Rivera or Salvatore Abbatiello as officers who participated in any illegal activity. (Ex. F, Dilullo Aff. ¶ 7; Ex. H) According to the plaintiff's December 2, 1998 statement, the last incident with a police officer occurred in or about April 1998. (Ex. F, Dilullo Aff. ¶ 6; Ex. H)

On December 8, 1998, the plaintiff was interviewed by Sergeants Sanzo and Lyons. (Ex. D, Sanzo Aff. ¶ 8; Ex. J, Lyons' Aff. ¶¶ 7-8) During this interview, the plaintiff reported for the *first time* that she had been recently assaulted by Officer Rivera. (Ex. J. Lyons' Aff. ¶ 7; Ex. L, Lyons' Memo) The plaintiff maintained that the assault occurred on December 4 or 5, 1998. (Ex. L, Lyons' Memo)

On January 6, 1999, the plaintiff testified before a federal Grand Jury that the last

incident with Rivera occurred when she was released from jail in November, 1998. (Ex. M,

1/6/99 Grand Jury Tr. at 43-44; Ex. G)  The incident with Rivera was the last time when a

Hartford police officer allegedly coerced the plaintiff to engage in sexual activity. (Ex. F,

Dilullo Aff. ¶¶ 10 & 12)  On March 3, 1999 and May 3, 2000, the plaintiff testified before the

Grand Jury that the last incident with a Hartford police officer occurred in November 1998. (Id.

¶ 12)

c.    **The Investigations by the HPD in Response to Citizens'
Complaints Requires the Entry of Summary Judgment in
Favor of Chief Croughwell and Hartford**

In a case involving the alleged existence of a municipality's custom of failing to punish

sexual misconduct on the part of police officers, courts have held that a plaintiff is required to

prove:

> (1) the existence of a continuing, widespread, persistent pattern of
> unconstitutional misconduct by the governmental entity's
> employees; (2) deliberate indifference to or tacit authorization of
> such conduct by the governmental entity's policymaking officials
> after notice to the officials of that misconduct; and (3) that plaintiff
> was injured by acts pursuant to the governmental entity's custom,
> i.e., that the custom was a moving force behind the constitutional
> violation.

Mettler v. Witledge, 165 F.3d 1197, 1204 (8th Cir. 1999); Jones v. Ziegler, 894 F. Supp. 880,

890 (D. Md. 1995), aff'd 104 F.3d 620 (4th Cir. 1997).  "'Deliberate indifference' . . . 'is

determined by analyzing whether the municipality knew or should have known of the risk of

constitutional violations,' but did not act."  Warren v. District of Columbia, 353 F.3d 36, 39

(D.C. Cir. 2004).  Although this is an objective standard, it involves more than mere negligence.

"It does *not* require the City to take reasonable care to discover and prevent constitutional

violations.  It simply means that, faced with actual or constructive knowledge that its agents will

13

probably violate constitutional rights, the City may not adopt a policy of inaction." Id. (emphasis original).

If a police chief or other policymaker throws a citizen's complaint into a waste paper basket or tells the office of investigations to pay no attention to the complaints, a jury might infer deliberate indifference. Wilson v. City of Chicago, 6 F.3d 1233, 1240 (7th Cir. 1993) (Posner, C.J.). See Jones, 894 F. Supp. at 891. However, where a police chief refers complaints to the unit within the police department that is responsible for investigating alleged police abuses, there can be no basis for an inference of deliberate indifference. See Wilson, 6 F.3d at 1240. This conclusion is true regardless of whether or not the plaintiff or court disagrees with the ultimate determination of an investigation or with the speed in which that investigation occurs. Id. Moreover, shortcomings in investigations do not demonstrate a "continuing, widespread, or persistent pattern of misconduct." Mettler, 165 F.3d at 1205. See id. (affirming summary judgment because plaintiff produced no evidence that previous investigations were inadequate or that such investigations were a moving force in the constitutional violation).

"[C]lose ex-post scrutiny of municipal decision making is an exercise ... the federal courts are ill-suited to undertake." Jones 894 F. Supp. at 892. See City of Canton, 489 U.S. at 392. The final result of an investigation or the severity with which an officer is disciplined might be second guessed at a later point in time; but they cannot constitute the deliberate indifference necessary to establish municipal liability. Jones, 894 F.Supp at 892. The fact that the police department does not investigate the complaint as quickly or as effectively as a plaintiff or a court might, in hindsight, have liked, is irrelevant. Wilson, 6 F.3d at 1240. It certainly does not amount to deliberate indifference. Id. More is needed to show that a policymaker "approved the practice" being investigated. Id. Thus, "[f]ailing to eliminate a practice cannot be equated to approving it. Otherwise every inept police chief in the country would be deemed to approve, and

14

therefore become answerable in damages to all the victims of, the misconduct of the officers under his command – indeed might (contrary to Deshaney v. Winnebago County Dep't. of Soc. Servs., 489 U.S. 189 (1989)) be deemed responsible for all the murders and robberies that he had through his carelessness failed to prevent." Wilson, 6 F.3d at 1240.

Moreover, what cannot be overlooked is the fact that the filing of a complaint by a citizen does not automatically call for the discipline of a police officer. Stengel v. City of Hartford, 652 F. Supp. 572, 574 (D. Conn. 1987). Consequently, a plaintiff must establish with specificity any alleged inadequacies in an investigation. Id. Moreover, the specifics of any single investigation do not constitute a persistent and widespread practice or custom by the municipality. See Jones, 894 F. Supp. at 891.

In the instant case, the January 26 Ruling's question regarding the "promptness" of the investigation is misplaced. The undisputed evidence establishes that the commander of the HPD's Internal Affairs Division is responsible for receiving, evaluating, classifying and assigning complaints against police officers. (Ex. P, Dryfe Aff. ¶ 4) The evidence also establishes that the HPD investigates citizens' complaints against its officers. (Id. ¶¶ 3-10) Those investigations can result in an officer being disciplined, including suspension, termination and/or arrest. (Id. ¶ 5) It is undisputed that all of the fourteen complaints to the HPD between 1993 and the end of 1998, not all of which involved alleged assaults, were investigated and discipline was imposed in most cases. (Ex. P, Dryfe Aff. ¶¶ 6-10; Ex. D, Sanzo Aff. ¶¶ 4-5; Ex. C, Croughwell Aff. ¶¶ 3-8) That discipline included the arrests of officers. (Ex. P, Dryfe Aff. ¶ 10)

The undisputed evidence also demonstrates that in August 1998, in response Richard's complaint that an unidentified officer coerced her into performing sexual acts, Chief Croughwell immediately ordered an investigation. (Croughwell Aff. ¶ 4) The plaintiff was contacted as a

15

result of that investigation. (Sanzo Aff. ¶¶ 6-7) Chief Croughwell also contacted the Chief

State's Attorney to seek assistance and to discuss possibly empanelling a Grand Jury.

(Croughwell Aff. ¶ 5) He also accepted the United States Attorney's offer of assistance from the

FBI. (Id.) When a joint task force was formed, Chief Croughwell assigned at least two sergeants

from the HPD to it. (Id. ¶ 8)

The Court also overlooked the fact that the plaintiff did not produce any evidence

regarding the fourteen complaints received by the HPD or her own August 19, 1998 complaint,

each of which was "investigated." In the face of Chief Croughwell's and Hartford's evidence

and the failure in her evidence, the plaintiff cannot maintain a failure to train, supervise,

investigate or discipline claim as a matter of law.[6] See Celotex Corp. v Catrett, 477 U.S. 317,

322-23 (1986). There is no evidence of a widespread policy or custom of acquiescence of

complaints being disregarded. In fact, because the HPD and Chief Croughwell did investigate

complaints, there is no basis for finding deliberate indifference. See Wilson, 6 F.3d at 1240.

Moreover, a Monell claim cannot be the vehicle to second guess the results of past police

investigations and disciplinary decisions. See Santiago v. Fenton, 891 F.2d 373, 382 (1st Cir.

1989) (failure to discipline in specific instance cannot support Monell claim); Sarus v. Rotundo,

831 F.2d 397, 401-02 (2d Cir. 1987) (evidence of disciplinary proceedings against officers

eliminates basis for finding system so deficient as to reflect policy of deliberate indifference).

Under no circumstances should such *post facto* analysis be undertaken by a jury in the face of no

evidentiary showing by the plaintiff.

---

6/    See Mettler, 165 F.3d at 1205 (affirming summary judgment where plaintiff failed to
offer any evidence that any previous investigations were inadequate or that such investigations
caused the alleged constitutional violation); Thomas v. Roche, 165 F.3d 137, 145 (2d Cir. 1999)
(affirming summary judgment based on plaintiff's failure to meet his burden regarding deliberate
indifference in connection with investigation of civilian complaints).

Finally, with regard to causation, even if the training, supervisory, investigatory or disciplinary policies employed by a police department encourage unconstitutional acts of individual officers, and even if the police chief creates a "climate in which [an individual officer feels] immune from the consequences" of his illegal acts, it would not constitute an affirmative cause of a plaintiff's injury. See Jones, 894 F. Supp. at 894. Any alleged shortcomings in an investigation and disciplinary action could not be considered to be the "moving force" behind or "proximate cause" of a sexual assault. Id. See Poe, 282 F.3d at 140 ("affirmative causal link"). The argument that if a particular officer or officers had been fired at an earlier point in time, a later sexual assault would not have occurred, does not satisfy the causation requirement for municipal liability under § 1983. Jones, 894 F.Supp. at 895. Such an argument is merely an attempt to apply an impermissible "but-for" test of causation. Id. at 894. The only way to impose liability on a municipality under these circumstances would be to find a "custom or practice of acquiescence by the municipal policy-maker in such rule-breaking . . . ." Warner v. City of Terre Haute, 30 F.Supp.2d 1107, 1121-22 (S.D. Ind. 1998). Accordingly, for a plaintiff to survive summary judgment on the issue of municipal liability, she would have to "***proffer sufficient evidence*** from which a reasonable fact-finder could discern either an unexpressed municipal policy, practice, or custom of acquiescence, or conduct by a person who has final policymaking authority with respect to actions taken against her." Id. at 1122 (emphasis added). In the instant case, the plaintiff produced no evidence to satisfy this standard. Accordingly, reconsideration is appropriate and summary judgment should be entered in favor of Chief Croughwell and Hartford.

**B.    The Court Erred By Failing To Address Chief Croughwell's Qualified Immunity Defense And He Is Entitled To Summary Judgment Under That Defense**

Although the January 26 Ruling included a discussion of the qualified immunity doctrine, it did not address Chief Croughwell's arguments under the doctrine. (1/26/05 Ruling at 10) Accordingly, a discussion of the qualified immunity doctrine is appropriate. As demonstrated below, the application of the qualified immunity analysis to the case at bar reveals that the Court should have granted Chief Croughwell summary judgment under the doctrine.

**1.    Qualified Immunity: General Principles**

Qualified immunity is more than a simple defense - it is "an entitlement not to stand trial or face the other burdens of litigation,...an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). See Gregoire v. Biddle, 177 F.2d 579, 581 (2d Cir. 1949) (L. Hand, C.J.). The question of qualified immunity is an issue to be decided as a matter of law by the court. Warren v. Dwyer, 906 F.2d 70, 76 (2d Cir. 1990). See Mendoza v. Block, 27 F.3d 1357, 1360 (9th Cir. 1994) (pure question of law). In a case with multiple defendants, the court must conduct an individual analysis of the qualified immunity defense as to each defendant.

In Saucier v. Katz, the Supreme Court recognized that the "requisites of a qualified immunity defense must be considered in proper sequence." 533 U.S. 194, 200 (2001). See Ehrlich v. Town of Glastonbury, 348 F.3d 48, 54-55 (2d Cir. 2003). That sequence requires consideration as a threshold matter the question of whether the officials conduct violated a constitutional right. Saucier, 533 U.S. at 201. "This must be the initial inquiry." Id. In setting forth the sequence approach to qualified immunity, the Supreme Court "speaks in mandatory

terms -- lower courts **must** determine the violation before engaging in a qualified immunity

analysis." Ehrlich, 348 F.3d at 55 (emphasis original).

In determining whether the violation of a constitutional right has been alleged, the

validity of the qualified immunity analysis "depends substantially upon the level of generality at

which the relevant 'legal rule' is to be identified." Anderson v. Creighton, 483 U.S. 635, 639

(1987). See International Action Ctr. v. United States, 365 F.3d 20, 25 (D.C. Cir. 2004). Thus,

at the first stage of the inquiry, courts must not define the relevant constitutional right in overly

general terms, less they strip the qualified immunity defense of all meaning. International

Action, 365 F.3d at 25. For example, it does no good to allege that a public official violated the

right to free speech, and then conclude that the right to free speech has been "clearly established"

in this country since 1791. Id. Instead courts must define the right "to a degree that would allow

officials reasonably to anticipate when their conduct may give rise to liability for damages." Id.

(citation, internal quotations and brackets omitted).

If a violation is established, "the next, sequential step is to ask whether the right was

clearly established." Saucier, 533 U.S. at 201. The Second Circuit recently described the

process of determining whether a right was "clearly established" in Huminski v. Corsones, 2005

WL 94542, at *27 (2d Cir. Jan. 18, 2005). In that case, the court recognized that a right is

"clearly established" if its "'contours…[are] sufficiently clear that a reasonable official would

understand what he is doing violates that right.'" Id. (quoting Anderson, 483 U.S. at 640).

"'This is not to say that an official action is protected by qualified immunity unless the very

action in question has previously been held unlawful; but it is to say that in the light of pre-

existing law the unlawfulness must be apparent.'" Id. That is the right must be defined with

"reasonable specificity." Id. (citation and internal quotation marks omitted). "In performing this

analysis, [courts within the Second Circuit] look to the established law of the Supreme Court and

of [the Second Circuit] at the time of the defendants' actions." Id. See Anobile v. Pelligrino, 303 F.3d 107, 125-26 (2d Cir. 2002).

Under the final step of the analysis, even if a plaintiff demonstrates that a defendant violated a clearly established law, a defendant is entitled to qualified immunity if a reasonable official could have believed that his actions were lawful in light of clearly established law and the circumstances confronting him. Poe, 282 F.3d at 146. A defendant is therefore entitled to summary judgment on qualified immunity grounds, if a jury, viewing all facts in the light most favorable to the plaintiff, could conclude that officials of reasonable competence could disagree on the legality of the defendant's actions. Id. A district court errs by "not conducting the legal inquiry necessitated by the defense of qualified immunity, which requires that a court determine whether under the plaintiff's version of the facts, reasonable officers in the defendant's position could disagree as to the legality of his actions." Id.

### 2. The Claims Against Chief Croughwell Are Barred by Qualified Immunity

The plaintiff's claims against Chief Croughwell are also barred by the doctrine of qualified immunity. First, the plaintiff has never articulated what constitutional right Chief Croughwell allegedly violated, let alone established that he violated that right. In fact, she has never cited the provision in either the Constitution or the Bill of Rights that she maintains that the Chief violated. She has also never identified a theory of supervisory liability that was allegedly violated, let alone established that that theory was in fact violated.

Second, the plaintiff has not identified either a Supreme Court or Second Circuit decision prior to August 19, 1998 which "clearly established" the unidentified supervisory liability theory that was allegedly violated. In fact, Poe confirms that a supervisor is not obligated to act without prior "notice" or "knowledge." 282 F.3d at 126, 142. It also confirms that when a supervisor

20