takes action, he cannot be found to have been deliberately indifferent. Id. at 142. See Wilson, 6 F.3d at 1240.

Finally, the undisputed evidence in the case demonstrates that Chief Croughwell's conduct was "objectively reasonable." In other words, at a minimum, officials of reasonable competence could disagree about the legality of his conduct. Poe, 282 F.3d at 146. Thus, Chief Croughwell is entitled to summary judgment.

As the Second Circuit recognized in Poe, it is error for a district court not to address qualified immunity prior to a case being submitted to a jury. Id. Accordingly, in this case, the Court should reconsider the January 26 Ruling and enter judgment in favor of Chief Croughwell.

## II.    THE COURT ERRED BY DENYING HARTFORD'S MOTION FOR SUMMARY JUDGMENT

The Court also erred in its analysis of the plaintiff's Monell claim. Under the Court's theory, the fact that citizens' constitutional rights were allegedly violated by itself creates a fact question on a Monell claim. As demonstrated throughout this memorandum, Hartford's response to citizens' complaints was not "clearly unreasonable in light of the known circumstances." Back v. Hastings On Hudson Free Sch. Dist., 365 F.3d 107, 129 (2d Cir. 2004). Thus, there could be no deliberate indifference. Consequently, the plaintiff's claim against Hartford fails as a matter of law. Accordingly, upon reconsideration, the Court should enter summary judgment in favor of Hartford.

### A.    The Court Overlooked The Case Law Governing Municipal Liability And The January 26 Ruling Is In Error Under That Case Law

It is respectfully submitted that the Court was mistaken in its application of the legal standards governing municipal liability under 42 U.S.C. § 1983. Thus, a review of the Supreme Court and Second Circuit case law is appropriate.

1.    **The Standard for Municipal Liability under the Supreme Court Case Law**

Section 1983 is not a "federal good government act for municipalities." City of Canton,

489 U.S. at 396 (O'Connor, J., concurring in part and dissenting in part). "The Supreme Court

has placed strict limitations on municipal liability under Section 1983." Gold v. City of Miami,

151 F.3d 1346, 1350 (11th Cir. 1998). It has explained that there are only "limited

circumstances" under which a municipality can be held liable on a failure to train or supervise

theory. Id. See Board of County Commissioners v. Brown, 520 U.S. 397, 405 (1997) ("rigorous

standards of culpability and causation"); id. at 410 ("stringent standard of fault"). In analyzing

failure to train or supervise claims, the Supreme Court requires precision. See Collins v. City of

Harker Heights, 503 U.S. 115, 122 (1992) (cases emphasize separate character of inquiry into

questions of municipal responsibility and question of whether constitutional violation occurred).

The theories must "be carefully controlled at critical points to avoid imposing by indirection a

form of vicarious municipal liability flatly rejected by Monell." Spell v. McDaniel, 824 F.2d

1380, 1389 (4th Cir. 1987).

In Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658 (1978), the Court held

that municipal liability under § 1983 can be imposed only where the municipality itself "causes"

the constitutional violation.[7] The Court reasoned that § 1983, as originally enacted, imposed

liability of a person "subjected, or caused to be subjected," another person to the deprivation of

---

7/    "Monell is a case about responsibility." Pembaur v. City of Cincinnati, 475 U.S. 469, 478
(1986) (opinion of Brennan, J.). Monell's conclusion that tortious conduct, to be the basis for
municipal liability under § 1983, must be pursuant to a municipality's "official policy" was
intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and
thereby make clear that municipal liability is limited to action for which the municipality is
actually responsible. Id. at 479-80. See Monell, 436 U.S. at 691. Monell reasoned that recovery
from a municipality is limited to acts that are, properly speaking, acts "of the municipality" --
that is, acts which the municipality has officially sanctioned or ordered. Pembaur, 475 U.S. at
480.

federally protected rights. By specifically imposing liability for the torts of another person if one "caused" the tort to be committed, the statutory language suggested that Congress "did not intend § 1983 liability to attach where such causation was absent." Monell, 436 U.S. at 692. See City of Springfield v. Kibbe, 480 U.S. 257, 266 (1987) (O'Connor, J., dissenting). The Monell Court concluded that Congress did not intend, in enacting § 1983, that municipalities be held vicariously liable for the tortious conduct of their employees. It is only when the "execution of [the] government's policy or custom…inflicts the injury" that the municipality may be held liable under § 1983. 436 U.S. at 694.

In Oklahoma City v. Tuttle, 471 U.S. 808 (1985), the Court considered whether evidence of a single incident of use of excessive force by the police could, without more, establish a municipal policy of failing to properly train and supervise police officers. The Court concluded that to allow evidence of a single incident to establish inadequate training, without any proof relating to the nature of the training itself, would "unduly threaten [a municipality's] immunity from *respondeat superior* liability." Id. at 830 (Brennan, J., concurring). Instead, to establish inadequate training, plaintiffs must put forward some evidence that the municipality itself has acted or consciously not acted. Id. at 832 (Brennan, J., concurring).[8]

"The plurality opinion in Tuttle made clear that to establish municipal liability for a policy that is not itself unconstitutional, *the plaintiff must introduce evidence* sufficient to establish the existence of the policy; evidence showing that the city was at fault for establishing

---

8/      In Pembaur v. City of Cincinnati, 475 U.S. 469 (1986) the Court clarified that Tuttle should not be taken to mean that a single act could never be the basis of municipal liability. So long as the single challenged act was the decision of a municipal *policymaker*, the municipality could be held liable. Id. at 480. The Court revisited the policymaker question in St. Louis v. Praprotnik, 485 U.S. 112 (1988). There, it affirmed that state law provides a proper source for assessing who possesses final authority to establish municipal policy. Id. at 124 (opinion of O'Connor, J.). In sum, Tuttle and Pembaur require plaintiffs to establish actual conduct by a municipal policymaker. See Walker v. City of New York, 974 F.2d at 296. Praprotnik ensures that only actions by officials relatively high up in the municipal hierarchy will produce municipal liability. Id.

the policy; and evidence establishing that the policy was the ***moving force in causing*** the

constitutional harm. A ***plaintiff does not carry the burden*** of proving these elements merely by

introducing evidence concerning the particular incident at issue: 'where a policy relied upon is

not itself unconstitutional, considerable more proof than the single incident will be necessary in

every case to establish both the requisite flaw on the part of the municipality, and the causal

connection between the 'policy' and the constitutional deprivation.'" Kibbe, 480 U.S. at 270-71

(O'Connor, J., dissenting) (quoting Tuttle, 471 U.S. at 824) (emphasis added).

In City of Canton v. Harris, 489 U.S. 378 (1989), the Court addressed the dimensions of

municipal liability for a failure to train or supervise. Harris sued Canton alleging that the city

had failed to adequately train its police as to when to summon medical care for an injured

detainee. The Supreme Court ruled that a claim of inadequate training will trigger municipal

liability only where "the failure to train amounts to deliberate indifference to the rights" of those

with whom municipal employees will come into contact. Id. at 388. The Court explained that

"deliberate indifference" requires that city policymakers make a "deliberate choice...from

among various alternatives" not to fully train employees. Id. at 389. Such a deliberate choice

could be shown where "in light of the duties assigned to specific officers or employees the need

for more or different training is so obvious, and the inadequacies so likely to result in the

violation of constitutional rights, that the policymakers at the city can reasonably be said to have

been deliberately indifferent to the need." Id. at 390.

City of Canton recognizes that under Monell, the first inquiry in any case alleging

municipal liability under § 1983 is to question whether there is a direct causal link between a

municipal policy or custom and the alleged constitutional deprivation. 489 U.S. at 385. Thus, in

the context of a failure to train claim, the plaintiff must prove that the lack of training was the

"cause" of the constitutional injury at issue and that this entails more than simply showing "but

for" causation. Id. at 393 (O'Connor, J., concurring in part and dissenting in part). In other words, demonstrating that the municipality itself caused the constitutional violation is the "touchstone" of establishing that a municipality can be held liable for unconstitutional action by municipal employees. Amnesty America v. Town of West Hartford, 361 F.3d 113, 125 (2d Cir. 2004).

The Court in City of Canton, also recognized that if it were to adopt lesser standards of fault and causation, it would open municipalities to unprecedented liability under § 1983. 489 U.S. at 391. It noted that in virtually every instance where a person has had his or her constitutional rights violated by a city employee, a § 1983 plaintiff will be able to point to something the city "could have done" to prevent the unfortunate incident. Id. at 392. Thus, permitting cases against cities for their "failure to train" employees to go forward under § 1983 on a lesser standard of fault would result in *de facto respondeat superior* liability on municipalities -- a result the court rejected in Monell, 436 U.S. at 693-94. See City of Canton, 489 U.S. at 391. "It would also engage the federal courts in an endless exercise of second-guessing municipal employee-training programs." City of Canton, 489 U.S. at 392. This was an exercise the Court believed the federal courts were "ill-suited to undertake, as well as one that would implicate serious questions of federalism." Id.

### 2. Second Circuit Case Law on Municipal Liability Supports the Entry of Summary Judgment

On March 15, 2004, the Second Circuit issued a decision in Amnesty America v. Town of West Hartford, 361 F.3d 113 (2d Cir. 2004). The January 26 Ruling did not cite Amnesty America and as demonstrated below, under the standard articulated by the Second Circuit in that case and others, Croughwell's and Hartford's motion for summary judgment should have been granted.

### a.    Failure to Train

In Amnesty America, arrestees sued a town under § 1983, alleging that police used excessive force against them at anti-abortion demonstrations. The plaintiffs' claims included a claim for failure to train. In response to the town's motion for summary judgment, the plaintiffs argued that they had proffered sufficient evidence for a reasonable fact finder to conclude that the town's failure to train constituted deliberate indifference within the meaning of City of Canton v. Harris, 489 U.S. 378 (1989) and Walker v. City of New York, 974 F.2d 293 (2d Cir. 1992). The Second Circuit rejected their argument. It held that the plaintiffs had "neglected to offer any evidence,..., as to the purported inadequacies in the Town's training program and the causal relationship between those inadequacies and the alleged violations." Amnesty America, 361 F.3d at 129.

Amnesty America recognized that City of Canton requires that plaintiffs establish not only that the purported failure to train occurred under circumstances that could constitute deliberate indifference, but also that plaintiffs identify a specific deficiency in the municipality's training program and establish that that deficiency is "closely related to the ultimate injury," such that it "actually caused" the constitutional deprivation. 361 F.3d at 129. The elements of an identified training deficiency and a close causal relationship, which together require the plaintiff to prove that the deprivation occurred as a result of a municipal policy, ensure that a failure to train theory does not collapse into *respondeat superior* liability. Id. at 130.

The Second Circuit concluded that the plaintiffs had proffered no evidence of the town's training programs or advanced any theory as to how a training deficiency caused the police officers to use excessive force. Id. The plaintiff's failure to train theory was based solely on evidence that the police used excessive force on two successive occasions. Id. "City of Canton unequivocally requires, however, that the fact finder's inferences of inadequate training and

causation be based on more than the mere fact that the misconduct occurred in the first place."

Amnesty America, 361 F.3d at 130. Accordingly, the Second Circuit affirmed the entry of

summary judgment on the failure to train claim. Specifically, it held that:

> It is ***impossible to prevail*** on a claim that the Town's training
> program was inadequate ***without any evidence*** as to whether the
> Town trained its officers between the two demonstrations, how the
> training was conducted, how better or different training could have
> prevented the challenged conduct, or how 'a hypothetically well-
> trained officer would have acted under the circumstances' to
> remove passively resisting protestors....Moreover, plaintiffs have
> provided no evidence tending to rule out those causes of the
> excessive force that would not support municipal liability, such as
> the negligent administration of a valid program, or one or more
> officers' negligent or intentional disregard of their training, and
> therefore no reasonable fact finder could conclude that the
> excessive force occurred as a result of training
> deficiencies....Because plaintiffs have failed to raise an inference
> that the police were improperly trained and that this training caused
> them to use excessive force, we affirm the district court's grant of
> summary judgment as to this theory of municipal liability.

Amnesty America, 361 F.3d at 130-31 (emphasis added).

Subsequently, district courts applying Amnesty America have granted summary

judgment against plaintiffs' failure to train claims where the plaintiff fails to produce the

requisite evidence. For example, in Lasher v. City of Schenectady, 2004 WL 1732006, at *10

(N.D.N.Y. Aug. 3, 2004), the court concluded that the plaintiff had proffered no evidence of the

city's training program or advanced any theory as to how a training deficiency caused a

deprivation of its rights. Id. Instead, he had only asserted a conclusory allegation that the city

had failed to train its officers not to engage in certain unconstitutional acts. Id. He only offered

as evidence a list of prior felony convictions of city police officers, sworn testimony regarding

the behavior of city police officers, and case law in which city police officers were found liable

for civil rights violations. Id. The court held that this showing was insufficient because a fact

finder's inferences of inadequate training and causation had to be based on more that the mere fact that misconduct occurred in the first place.  Id.

Similarly, Judge Goettel, applying Amnesty America granted summary judgment on Monell claims based on a police department's alleged policy of conducting aggressive surveillance and a failure to train claim.  Perrelli v. City of East Haven, 2004 WL 1202718, at **3-5 (D. Conn. May 28, 2004).  He concluded that the plaintiff had "failed to offer any evidence as to the purported inadequacies in the City's training program and the causal relationship between those inadequacies and the alleged constitutional violations."  Id. at *4. The court also concluded that the plaintiff's testimony standing alone was insufficient to establish a policy, practice or custom by the police department.  Id. at *5.  Finally, the court noted that the plaintiff had produced no evidence that the Chief of Police was aware of any unconstitutional activity on the part of the officers or that he acquiesced in it in any way.  Id.

### b.    Failure to Supervise/Investigate/Discipline

With regard to the failure to supervise claim, the Second Circuit in Amnesty America noted that the plaintiffs had

> *proffered ample evidence* from which a reasonable factfinder could conclude that the necessity for more supervision was glaringly obvious at both demonstrations and that [Chief] McCue ignored the alleged constitutional violations in progress. *Plaintiffs' proffered affidavits*, if credited, establish that at both demonstrations, police officers inflicted severe pain on arrestees and made comments suggesting that they intended to inflict pain, and that continuous screams of pain punctuated the demonstrations.   Thus, plaintiffs' evidence would allow a reasonable factfinder to conclude that violence did not occur as an isolated instance, involving a few protesters and officers in one physical location, but that it permeated the entire arrest scene. Given this environment, a factfinder could infer from McCue's presence at the demonstrations that he must have witnessed the violence and heard the screams. Plaintiffs also aver that, during the second demonstration, McCue not only observed, but actually encouraged and supervised some of the alleged brutal treatment of the arrestees,....

28

Amnesty America, 361 F.3d at 127-28 (emphasis added).

Thus, Amnesty America confirms that in order to prevail on a failure to supervise/investigate/discipline claim, a plaintiff must produce evidence that a municipal policymaker ignored complaints of misconduct. See Wilson, 6 F.3d at 1240 (Posner, C.J.); Jones, 894 F.Supp. at 890-91. See also Warren, 353 F.3d at 39. Here, it is undisputed that the plaintiff produced no such evidence. To the contrary, the evidence demonstrates that complaints to the HPD were investigated and that discipline was imposed when the investigations concluded that it was warranted. What the plaintiff and the January 26 Ruling overlook is that the investigation of all the complaints and the imposition of discipline mandate the entry of summary judgment in favor of Hartford.

### 3.    Deliberate Indifference

"Deliberate indifference means shutting one's eyes to a risk one knows about but would prefer to ignore." Delgado v. Stegall, 367 F.3d 668, 671 (7th Cir. 2004) (Posner, J.). The standard for "deliberate indifference" is a "stringent" one. Brown, 520 U.S. at 410. See Cain v. Rock, 67 F.Supp.2d 544, 550 (D. Md. 1999) ("high" standard). It requires the plaintiff to show that the municipality disregarded a known or obvious risk that the policy would lead to the deprivation of federal rights. Brown, 520 U.S. at 410; Cain, 67 F.Supp.2d at 550.

"Deliberate indifference" describes a mental state more blameworthy than negligence. Hernandez v. Keane, 341 F.3d 137, 144 (2d Cir. 2003), cert. denied, 73 U.S.L.W. 3414 (Jan. 18, 2005). It "is 'a state of mind that is the equivalent of criminal recklessness.'" Id. The Second Circuit has set out three requirements that must be met by a plaintiff before a municipality's failure to train or supervise constitutes deliberate indifference to the constitutional rights of citizens. See Walker, 974 F.2d at 297. Specifically, a plaintiff must show that: (1) a policymaker knows "to a moral certainty" that her employees will confront a given situation; (2)

29

the situation presents that employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation; and (3) that the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights. Id. at 297-98. As to the second element, the Walker court explained that "[a] choice might be difficult where, although the proper course is clear, the employee has powerful incentives to make the wrong choice." Id. at 297.

**B.     The Court Erred In Its Application Of The Standard Governing Municipal Liability Under § 42 U.S.C. 1983**

A review of the complete failure in the plaintiff's proof confirms that reconsideration is appropriate. Specifically, the plaintiff produced no evidence regarding any Hartford policy or custom. She produced no evidence regarding training, supervisory, investigatory or disciplinary policies or customs employed by the HPD. She produced no evidence regarding training, supervisory, investigatory or disciplinary policies or customs employed by other police departments. She produced no evidence of any deficiency, let alone the requisite "obvious" deficiency, in any training, supervisory, investigatory or disciplinary policy or custom employed by the HPD.

Moreover, the plaintiff did not produce any evidence that a deficiency in a HPD training, supervisory, investigatory or disciplinary policy *caused* her alleged injury. Nor did she rule out the possibility that any injury was in fact caused by an officer's negligent or mistaken application of his training, as opposed to a deficient training policy implemented by the HPD. The plaintiff also did not produce any evidence regarding what training, supervision, investigation or discipline would have prevented Rivera from having assaulted her. Finally, she did not offer any expert testimony. See Fittanto v. Children's Advocacy Ctr., 836 F.Supp. 1406, 1418 (N.D. Ill. 1993). These deficiencies in the plaintiff's evidence are the functional predicate of her

complaint, which fails to identify with specificity the constitutional rights that were allegedly violated.

In addition to being contrary to the standards recognized by <u>Amnesty America</u>, <u>Walker</u> and the Supreme Court, the January 26 Ruling's denial of summary judgment despite the absence of evidence in the record is contrary to a plethora of decisions issued by other federal courts. For example, the district judges in Connecticut have overwhelmingly recognized that in order to establish municipal liability, plaintiffs must produce the requisite evidence and satisfy the *stringent burden of proof*. Where a plaintiff fails to produce evidence and carry her burden of proof on a <u>Monell</u> claim, the judges in this district have entered summary judgment in favor of the municipality.[9] Numerous other circuit and district courts have reached the same result.[10]

---

9/    <u>Watts v. City of Hartford</u>, 2004 WL 717132, at *4 (D. Conn. Mar. 31, 2004) (Chatigny, C.J.) (granting summary judgment on failure to supervise claim and recognizing that plaintiff "must provide evidence" demonstrating deliberate indifference and that failure to discipline was closely related to and actually caused violation); <u>Birdsall v. City of Hartford</u>, 249 F.Supp.2d 163, 173-74 (D. Conn. 2003)(Underhill, J.) (granting summary judgment on <u>Monell</u> claim based on conclusory allegations); <u>Jones v. City of Bridgeport</u>, 2002 WL 272397, at *9 (D. Conn. Feb. 19, 2002) (Droney, J.) (granting summary judgment where plaintiff "has not made a sufficient showing" of evidence on failure to train claim); <u>Tsombanidis v. City of West Haven</u>, 129 F.Supp.2d 136, 162 (D. Conn. 2001) (Goettel, J.) (granting summary judgment where plaintiff failed to produce any evidence that the city had a policy or custom); <u>Thompson v. City of Meriden</u>, 1999 WL 301693, at **9-10 (D. Conn. Apr. 14, 1999) (Burns, J.) (granting summary judgment where plaintiff presented no evidence that the city maintained or condoned a policy or custom of allowing its police department to subject arrestees to excessive force); <u>Montavon v. Town of Southington</u>, 1997 WL 835053, at **4-5 (D. Conn. Sept. 29, 1997) (Eginton, J.) (granting summary judgment where plaintiff did not present any evidence creating material issue that single incident was based on policy, custom or practice or that patrol sergeant had final authority to create such policy); <u>Hanrahan v. City of Norwich</u>, 959 F. Supp. 118, 125 (D. Conn.) (Chatigny, J.) (granting summary judgment on failure to train claim where plaintiff failed to present evidence concerning procedures from other police departments), aff'd 133 F.3d 907 (2d Cir. 1997).

10/    <u>Larkin v. St. Louis Housing Auth. Dev. Corp.</u>, 355 F.3d 1114, 1117-18 (8th Cir. 2004) (affirming summary judgment and recognizing that the burden was on the plaintiff to proffer evidence establishing that officers needed additional training); <u>Lytle v. Doyle</u>, 326 F.3d 463, 473-74 (4th Cir. 2003) (affirming summary judgment because plaintiffs did not provide evidence that additional training would have resulted in officers responding any differently); <u>Pineda v. City of Houston</u>, 291 F.3d 325, 334-35 (5th Cir. 2002) (affirming summary judgment because

Accordingly, on reconsideration, this Court should enter summary judgment in favor of Hartford and Chief Croughwell.

With regard to the issue of deliberate indifference, the plaintiff did not produce any evidence to satisfy the Walker standard. Moreover, even if the plaintiff could produce evidence in connection with the three Walker criteria, her burden of proof would still not be satisfied. Post v. Elser, 1996 WL 406843, at *5 (N.D.N.Y. July 19, 1996). See Roque v. Feola, 2004 WL 2472266, at *4 (D. Conn. Oct. 25, 2004). The plaintiff had to establish that a policymaker was aware of a pattern of misconduct, but failed to institute appropriate training or supervision. Post, supra, at *5. The plaintiff was also required to show how a particular policymaker's specific choice with respect to the training, supervisory or investigatory deficiency at issue reflected "deliberate indifference" to her constitutional rights, and how this indifference directly "caused" her injuries. See id. In the absence of such proof, the plaintiff's claim cannot withstand summary judgment. Id.

Accordingly, a plaintiff must do more than assume on the basis of the events at issue both that the training and supervision of the officer was inadequate and that this inadequate training and supervision was the "cause" or "moving force" of the officer's allegedly unconstitutional behavior. Id. at *6. See Roque, supra, at *4. Such an assumption is question-begging. See

there was no competent evidence of any causal relationship between any shortcomings in training and injury complained of), cert. denied, 537 U.S. 1110 (2003); Hayden v. Gracen, 134 F.3d 449, 457 n.14 (1st Cir. 1998) (affirming summary judgment where there has been no showing that whatever training was not provided could have thwarted any purposeful discrimination); Ferreira v. Westchester County, 917 F. Supp. 209, 215-16 (S.D.N.Y. 1996)(Parker, J.) (granting summary judgment on failure to train claim absent showing of how a particular policymaker's specific choice with respect to the training deficiency at issue reflects "deliberate indifference" to constitutional rights and how the indifference directly caused injuries); Small v. City of New York, 1999 WL 1129054, at *6 (E.D.N.Y. Oct. 19, 1999) (granting summary judgment on failure to supervise claim where plaintiff failed to provide critical evidence demonstrating deliberate indifference and causation), aff'd 242 F.3d 367 (2d Cir. 2000); Morrissey v. City of New York, 963 F. Supp. 270, 275 (S.D.N.Y. 1997) (granting summary judgment where plaintiff failed to create fact question with regard to requirement that the employees be faced with a difficult choice made easier by adequate supervision and training).

Post, supra at *6. Under such a theory, inadequate training and supervision will always be inferred merely from the fact that a constitutional deprivation by a police officer occurred. See id. Such an approach is no more than a means for circumventing Monell's limitations all together. Id. Thus, in the instant case, even putting aside the plaintiff's failure to establish deliberate indifference, Hartford and Chief Croughwell are still entitled to summary judgment as a result of the plaintiff's submission of nothing more than conclusory allegations.

The Court has also overlooked the fact that the failure in the plaintiff's evidence was the result of her strategic decisions regarding discovery. Chief Croughwell and Hartford should not be penalized because of those decisions. See Sarus, 831 F.2d at 402 (loath to affirm finding of a policy of deliberate indifference where "most elementary of discovery procedures" were not pursued). Nor should the Court allow the plaintiff to undertake discovery for the first time during a jury trial. Such a result would be contrary to the purpose behind Rule 56. See Fed. R. Civ. P. 56(e), 1963 Advisory Comm. Notes (Rule 56's "mission" is to "assess the proof in order to see whether there is a genuine need for trial").

Further, the plaintiff has failed to argue, let alone produce evidence demonstrating, a causal connection between the alleged (but unidentified) municipal policy or custom and the constitutional violation. "Absent a showing a causal link between an official policy or custom and the plaintiffs' injury, Monell prohibits a finding of liability against [a municipality]." Batista v. Rodriguez, 702 F.2d 393, 397 (2d Cir. 1983). The plaintiff does not contend that Hartford's police training program authorizes its officers to assault citizens; rather, her argument is that the (yet to be identified) methods taught in Hartford's training program were inadequate (in a yet to be identified manner), and that if former Officer Rivera had received more or different training (the details of which have yet to be identified), Rivera would not have engaged in the alleged unconstitutional conduct. The plaintiff's theory on the failure to supervise/investigate/discipline

33

claim suffers from the same shortcoming. "The difficulty with [this] argument is that at the time of the officer's alleged misconduct, any number of other factors were also in operation that were equally likely to contribute or play a predominate part in bringing about the constitutional injury: the disposition of the individual officers, the extent of their experience with similar incidents.... To conclude, in a particular instance, that omissions in a municipal training program constituted the 'moving force' in bringing about the officer's unconstitutional conduct, notwithstanding the large number of intervening causes also at work up to the time of the constitutional harm, appears to be largely a matter of speculation and conjecture." Kibbe, 480 U.S. at 268. In other words, absent substantial evidence on causation, the plaintiff's Monell claim and her claim against Chief Croughwell fail as a matter of law.

Thus, the Court's comment, (1/26/05 Ruling, at 13), regarding what a jury might infer was misplaced. See Batista, 702 F.2d at 399 (plaintiff failed to prove officers knew others were not disciplined or that city policy condoned police violation of civil rights). In light of the complete failure in the plaintiff's evidence, such questions are speculation and conjecture. Accordingly, it would be error to submit them to a jury. See Fed. R. Civ. P. 56(e).

### C.  The Court Failed To Apply The Common Sense Rule As Mandated By Walker

The January 26 Ruling did not address the common sense rule. Such an analysis is mandated under Walker and the conducting of it confirms that Hartford and Chief Croughwell are entitled to summary judgment.[11] Hartford's evidence demonstrated that the HPD did investigate complaints and that officers were disciplined and arrested. Thus, there is no evidence of inaction by Hartford. See Wilson, 6 F.3d at 1240; Walker, 974 F.2d at 300. Accordingly, the plaintiff cannot avoid summary judgment under the common sense rule.

---

11/    Walker was cited and discussed at pages 23-24 of the defendants' May 26, 2003 memorandum. The January 26 Ruling did not cite Walker.

In Walker, with regard to the plaintiff's contention that the city's police department had an obligation to train and supervise officers not to commit perjury or aid in the prosecution of the innocent, the Second Circuit concluded that he had missed a "crucial step" in the analysis. 974 F.2d at 299. It recognized that

> [i]t is not enough to show that a situation will arise and that taking the wrong course in that situation will result in injuries to citizens. . . . City of Canton also requires a likelihood that the failure to train or supervise will result in the officer making the wrong decision. Where the proper response – to follow one's oath, not to commit the crime of perjury, and to avoid prosecuting the innocent – is obvious to all without training or supervision, then the failure to train or supervise is generally not 'so likely' to produce a wrong decision as to support an inference of deliberate indifference by City policymakers to the need to train or supervise.

Id. at 299-300. Thus, the court concluded that when the employee's "misdeeds relate to such basic norms of human conduct – the duty not to lie or prosecute the innocent - . . . in the ordinary case a municipal policymaker need not expend precious resources on training or supervision but can instead rely on the common sense of her employees." Id. at 301.

The Walker court acknowledged that the general rule might not apply in every case. Specifically it concluded that while it is reasonable for city policymakers to assume their employees possess common sense, where there is a history of conduct rendering this assumption untenable, city policymakers may display deliberate indifference by doing so. Id. at 300. Thus, the court held that if the plaintiff could "produce some evidence that *policymakers* were aware of a pattern of perjury by police officers *but failed to institute appropriate training or supervision*, his claim [could] survive summary judgment." Id. at 300 (emphasis added).

In the instant case, the plaintiff is not alleging confused conduct that could have been remedied by different training or supervision. She is alleging conduct, rape, which if proven, would constitute a felony. (Compl., ¶ 16) As such, no amount of training or supervision could have prevented such intentional and heinous conduct. Thomas v. City of Clanton, 285 F.Supp.2d

1279, 1284 (M.D. Ala. 2003). Further, to the extent that the plaintiff maintains that she is

alleging conduct which could have been corrected by training or supervision, it was her burden

to produce evidence regarding the specifics of such training or supervision and to demonstrate

how Hartford's training and supervision was *obviously* deficient. See LaMay v. Town of

Bloomfield, 62 F.Supp.2d 583, 589 (D.Conn. 1999); Behrens v. Sharp, 1993 WL 205078, at *1

(E.D. La. June 8, 1993), aff'd 15 F.3d 180 (5th Cir. 1994). She was also required to produce

evidence that any such obvious deficiency caused her injuries. See Carr v. Castle, 337 F.3d

1221, 1231-32 (10th Cir. 2003). She produced nothing. Accordingly, the Court erred by not

granting Chief Croughwell and Hartford summary judgment under the common sense rule.[12]

## IV.    THE CASE LAW RELIED UPON BY THE COURT SUPPORTS THE GRANTING OF CHIEF CROUGHWELL'S AND HARTFORD'S SUMMARY JUDGMENT MOTION

A review of the decisions primarily relied upon by the Court in the January 26 Ruling

reveals that they support the entry of summary judgment in favor of Chief Croughwell and

Hartford.

In Hernandez v. Keane, 341 F.3d 137 (2d Cir. 2003), cert. denied, 73 U.S.L.W. 3413

(Jan. 18, 2005), the Second Circuit affirmed the entry of a judgment in favor of the defendants in

a § 1983 case. With regard to the plaintiff's claim against a supervising doctor, the court held

that the plaintiff's evidence did not satisfy the standard for supervisory liability. Id. at 145.

---

12/    As explained by Amnesty America, 361 F.3d at 130 n.10, the key to Walker was the court's conclusion that the plaintiff should be given an opportunity to pursue discovery. After discovery was completed, the Walker court expected the plaintiff to produce evidence that policymakers were aware of a pattern of misconduct but failed to institute appropriate training or supervision. 974 F.2d at 300. Absent such evidence, the plaintiff could not survive summary judgment under the common sense rule. Id.

Here, discovery ended long ago. The plaintiff has produced no evidence and has not disclosed an expert witness. Accordingly, under Amnesty America and Walker, Hartford and Chief Croughwell are entitled to summary judgment under the common sense rule, i.e., there is no constitutional requirement to train or supervise police officers not to sexually assault citizens.

Specifically, it concluded that there was no evidence that the supervisor "had notice of,

instituted, or became aware of any unconstitutional policy, practice or act, or that he was grossly

negligent in supervising his subordinates." Id. The Hernandez court also confirmed the well-

established principle that negligent conduct is not the basis for a § 1983 claim. Id. at 146.

In Moffitt v. Town of Brookfield, 950 F.2d 880, 886 (2d Cir. 1991), the court concluded

that the supervisors liability might be premised on their "knowledge" of the subordinates'

activities based upon their receiving an employment appeal from the plaintiff and having failed

to remedy the wrong.

In Turpin v. Mailet, 619 F.2d 196 (2d Cir. 1980), the Second Circuit recognized that

"where senior personnel have knowledge of a pattern of constitutionally offensive acts by their

subordinates but fail to take remedial steps, the municipality may be held liable for a subsequent

violation if the superior's inaction amounts to deliberate indifference or to tacit authorization of

the offensive acts." Id. at 201. At the same time, however, the court acknowledged that

satisfying "that standard is undoubtedly difficult to meet." Id.

Consequently, in analyzing the case, the Turpin court concluded that the "fatal

weaknesses in Turpin's case lies not in his allegations but in his failure to prove any official

policy." Id. "There was no evidence of a prior pattern or practice of harassment on the part of

the police force, much less that it had been brought to the attention of the Board. Nor was there

any evidence that the Board, … knew or should have known of any police animus toward

Turpin." Id. "Thus, the Board's failure to take action, while perhaps unwise in light of later

events, appears to have been nothing more than an uneventful decision made not in the glare of

publicity but rather in the regular course of its business and hardly an indication of any policy

authorizing or encouraging police harassment of Turpin." Id. at 203.

Moreover, with regard to the plaintiff's evidence and the jury verdict in his favor, the Turpin court recognized that the Board of Police Commissioners' failure to discipline an officer fell "far short" of constituting deliberate indifference or a tacit encouragement of police officers to go out and harass the plaintiff. Id. Thus, it concluded that "no reasonable person could find, in light of the evidence adduced at trial, that [an officer's] unlawful arrest of [the plaintiff] was made pursuant to any official policy on the part of the City of West Haven." Id. The proof that the arrest of the plaintiff "was caused by the inaction of the Board [wa]s simply too attenuated to support municipal liability under § 1983. To permit liability to be predicated upon such evidence would totally overextend the principles of Monell and Rizzo." Id. Accordingly, the Second Circuit reversed the judgment against the City of West Haven.

Like Henandez, and Turpin and unlike Moffit, in the instant case, the plaintiff produced no evidence that either Chief Croughwell or any Hartford policymaker had "notice" or "knowledge" of sexual assaults and did not act. Nor did she produce any evidence of a Hartford policy or custom that "caused" her injuries. Moreover, to the extent the Court had questions regarding the "promptness" of the investigation ordered by Chief Croughwell, the record confirms that the HPD's investigation began immediately upon the receipt of Richard's complaint. Thus, it does not provide a basis for holding either the Chief or Hartford liable for a constitutional violation.

## V. THE CASE LAW ADDRESSING ALLEGATIONS OF SEXUAL MISCONDUCT SUPPORT THE GRANTING OF CHIEF CROUGHWELL'S AND HARTFORD'S MOTION FOR SUMMARY JUDGMENT

A review of the decisions which have addressed efforts to impose liability on municipalities under § 1983 in situations involving allegations of sexual assaults by police officers or other employees further confirms that the Court erred by not granting Hartford's and Chief Croughwell's motion for summary judgment.

In <u>Andrews v. Fowler</u>, 98 F.3d 1069 (8th Cir. 1996), a woman raped by a police officer while a minor, brought an action against municipal officers under § 1983. The Eighth Circuit affirmed the granting of summary judgment on the plaintiff's failure to train claim. <u>Id.</u> at 1076-77. In doing so, the court recognized that "[i]n light of the regular law enforcement duties of a police officer, we cannot conclude that there was a patently obvious need for the City to specifically train officers not to rape young woman." <u>Id.</u> at 1077. Moreover, the Eighth Circuit held that even if the training was in some manner deficient, the plaintiff could not demonstrate the "close relationship necessary to conclude that the City's failure to properly train [the officer in question] *caused* him to rape [the plaintiff] or even raise a question of fact as to causation." <u>Id.</u> <u>See</u> <u>Barney v. Pulsipher</u>, 143 F.3d 1299, 1308 (10th Cir. 1998) (not persuaded that "a plainly obvious consequence of a deficient training program would be the sexual assault of inmates. Specific or extensive training hardly seems necessary for a jailer to know that sexually assaulting inmates is inappropriate behavior.").[13]

In <u>Thomas v. City of Clanton</u>, 285 F.Supp.2d 1275 (M.D. Ala. 2003), a detainee brought a § 1983 action against a city and others, alleging violations of his Fourth Amendment right to be free from unreasonable searches and seizure and his Fourteenth Amendment right to bodily integrity. He claimed that the municipality should be liable for the violation of its Fourteenth Amendment because of its deliberate indifference to the risk created by a failure to train its officers in the proper methods of strip searches. <u>Id.</u> at 1284. While it was unclear to the court

---

13/    <u>See</u> <u>S.J. v. Kansas City Missouri Public Sch. Dist.</u>, 294 F.3d 1025, 1029 (8th Cir. 2002) (no "'patently obvious' need for public schools or principals to train volunteers not to commit felonies at home and in their private lives"); <u>Floyd v. Waiters</u>, 133 F.3d 786, 796 (11th Cir. 1998), <u>reinstated</u>, 171 F.3d 1264 (11th Cir. 1999) (Board was entitled to rely on the "common sense of its employees not to engage in wicked and criminal conduct"); <u>Sewell v. Town of Lake Hamilton</u>, 117 F.3d 488, 490 (11th Cir. 1997) (adopting <u>Walker</u>); <u>Johnson v. CHA Security Officers</u>, 1998 WL 474138, at *2 (N.D. Ill. Aug. 6, 1998) (granting motion to dismiss failure to supervise claim because housing authority was not constitutionally deficient for failing to train its officers not to sexually assault tenants and visitors since such assaults were "clearly contrary to the basic duties of the [officers] and fundamental norms of human conduct.").

39

whether or not the police department actually had a policy on body searches, or properly trained officers on how to conduct legal searches, the court concluded that that uncertainty did not preclude the entry of summary judgment. Regardless of whether there was actually any training or whether the training was proper, the plaintiff also needed to prove that the lack of training was the "'moving force'" (cause) behind his injuries in order to properly assert a claim against the municipality. Id. The court recognized that the plaintiff was not alleging that the officer in question conducted an inappropriate search because he was confused about the situations under which a strip search would be legal or that the officer needed additional guidance from his supervisors. Instead, the claim was that the officer *intended* to conduct an unconstitutional strip search. Thus, the court held that "where it appears that [the police officer in question] intentionally violated [the plaintiff's] rights, no amount of training would have prevented the violation." Id. (citing Walker).

## CONCLUSION

For the foregoing reasons, the Court should grant Hartford's and Chief Croughwell's motion for reconsideration and enter summary judgment in their favor.

Respectfully submitted,

**CO-DEFENDANTS**
**CITY OF HARTFORD AND**
**CHIEF JOSEPH CROUGHWELL**


By:
James J. Szerejko, Esq.
CT Fed. Bar No. 04326
**HALLORAN & SAGE LLP**
One Goodwin Square
225 Asylum Street
Hartford, CT  06103
Tel:  (860) 522-6103
Fax: (860) 548-0006
E-mail:  szerejko@halloran-sage.com

Their Attorney

## CERTIFICATION

This is to certify that on this 7th day of February, 2005, the foregoing was caused to be served via U.S. Mail, postpaid, to:

Wesley S. Spears, Esq.
53 Russ St.
Hartford, CT 06106
860-724-0505

James J. Szerejko