FILED

2005 APR -8  P 12: 05

U.S. DISTRICT COURT
BRIDGEPORT, CONN.

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JANE DOE II | : |
| | : CIVIL ACTION |
| V. | : NO: 3:01CV1026 (AHN)(HBF) |
| | : |
| CITY OF HARTFORD, ET AL | : March 30, 2005 |

## MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR RECONSIDERATION

### INTRODUCTION

The plaintiff, by and through her undersigned attorney, hereby files this

Memorandum in Opposition to Defendant's Motion for Reconsideration.

### STATEMENT OF FACTS

In 1994, the plaintiff made a complaint to the Hartford Police Department about

her being forced to engage in sex with several Hartford police officers. Plaintiff was

transported to Hartford Police Department to lodge a complaint by a Hartford Police

Lieutenant. See Exhibit D, Federal Bureau of Investigation 302 report dated March 2,

1999, attached to plaintiff's Brief in Opposition to Defendant's Motion for Summary

Judgment. She was placed in a holding room and two officers not in uniform and one

uniformed officer came into the holding room to take her complaint. While she was

giving her complaint the uniform officer was laughing at her. See Exhibit D, Federal

Bureau of Investigation 302, report attached to plaintiff's Brief in Opposition to Defendants' Motion for Summary Judgment. The officers taking the report did not take notes. See Exhibit D, Federal Bureau of Investigation 302 report, dated March 2, 1999 and Exhibit A, plaintiff's Affidavit ¶ 14 attached to plaintiff's Brief in Opposition to Defendants' Motion for Summary Judgment. Plaintiff's 1994, report of sexual assault was never investigated and is not mentioned in the defendants' Brief in Support of Defendants' Motion for Summary Judgment or for Reconsideration, in regard to defendants' claim that they investigated all complaints of sexual assaults by Hartford police officers.

The sexual assaults on the plaintiff continued from 1994 through November of 1998, by eight to ten Hartford Police Officers. See Affidavit of the Plaintiff attached as Exhibit A, to plaintiff's Brief in Opposition to Defendants' Motion for Summary Judgment ¶ 41.

The report of Detective Betz, attached to plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment, as Exhibit E, establishes that at least five other prostitutes, not including Yolanda Santiago, made similar reports of being sexually assaulted by Hartford police officers on August 19, 1998. No investigation of those complaints was conducted until December, 1998.

2

In addition, five Hartford Police Officers were convicted of sexually assaulting or conspiring to sexually assault prostitutes. The convictions of Officer Salvatore Gallo, Jesus Rivera, Michael Basile and Salvatore Abbatiello were based on acts of sexual assault against the plaintiff, including the November, 1998, sexual assault which is the subject of this lawsuit, and to which Officer Jesus Rivera plead guilty. See Exhibit A, Plaintiff's Affidavit, attached to her Brief in Opposition to Defendant's Motion for Summary Judgment ¶ ¶ 35 and 36.

The sexual assaults committed against the plaintiff continued until late November of 1998. See Exhibit A, Plaintiff's Affidavit ¶ 29. Plaintiff was interviewed by Sergeant Franco Sanzo and Sergeant John Betz on August 19, 1998, as a result of a complaint made by Stacy Richards, on August 5, 1998, a known prostitute, that she had been sexually assaulted on two or three occasions by Hartford police officers. Ms. Richards indicated that she was aware of other prostitutes, including the plaintiff, who were also being sexually assaulted. See Affidavit of Franco Sanzo attached to defendant's Brief in Support of their Motion for Summary Judgment as Exhibit D, ¶ 4.

The plaintiff's interview was conducted in the field not at the police department. The plaintiff was never asked to identify the officers who had assaulted her by reviewing department photos, even though she was willing to view photos. See Exhibit A, Plaintiff's Affidavit ¶ ¶ 15, 29. Further, the plaintiff was not interviewed again until December 2, 1998, by Agent Lisa Tuttie and Inspector Michael DiLullo, as part of a joint

3

Hartford Police Department, federal and state investigation.  See Exhibit A, Plaintiff's Affidavit ¶ 27, attached to plaintiff's Brief in Opposition to Defendants' Brief in Support of Defendants' Motion For Summary Judgment and the Affidavit of Michael Dillulo attached to the defendant's Brief in Support of Defendants' Motion for Summary Judgment as Exhibit F.  In fact, Chief Croughwell acknowledges in his affidavit, which is attached to defendants' Brief in Support of defendants' Motion for Summary Judgment as Exhibit C, that the FBI did not become the lead investigative agency until the task force was formed, which took several meetings.  Chief Croughwell gives no indication of when the task force was formed or when its investigation began.  See Affidavit of Chief Croughwell attached to defendants' Brief in Support of its Motion for Summary Judgment  as Exhibit C.

It is undisputed, that the Hartford Police Department conducted no investigation of the incident after August 19, 1998, until December 8, 1998, when Sergeants Sanzo and Lyons interviewed the plaintiff again.  Further, the task force did not begin its work until December, 1998, when it first interviewed the plaintiff on December 2, 1998.  The plaintiff was interviewed by members of the three investigative agencies involved in December of 1998, within a short time of each other.  It was not until March of 1999, that plaintiff was asked to view additional photographs by Agent Tuttie and Inspector Dillulo. See Exhibit A, of Plaintiff's Affidavit, attached to plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment ¶ 27 and Exhibit F of defendants' Brief in Support of Defendants' Motion for Summary Judgment, Affidavit of Michael Dilullo ¶ 8.

4

Chief Croughwell also does not imply in his affidavit that his department was not conducting its own investigation. The Sanzo and Lyons affidavit indicates that Hartford police resumed its investigation on December 8, 1998.   After the initial interview of the plaintiff on August 19, 1998, no Hartford Police Officer, inspector from the State's Attorney's Office or FBI agent attempted to contact the plaintiff or conduct any investigation until after plaintiff was sexually assaulted in November 1998, more than three months later. The persistent and pervasive pattern of sexual assaults on prostitutes required the formation of a joint state and federal and Hartford Police Department task force because Chief Croughwell did not feel he could adequately investigate his own department. See Chief Croughwell's Affidavit attached to defendants' Brief in Support of Defendants' Motion for Summary Judgment as Exhibit C.

Several Hartford police officers were assigned to the task force for the purpose of interviewing prostitutes who were sexually assaulted. See Exhibit J of defendants' Brief in Support of Defendants' Motion for Summary Judgment, Affidavit of Christopher Lyons ¶¶ 6 and 7.

During the course of the investigation, it was learned that allegation of sexual assaults by Hartford police officers against prostitutes was widespread and involved a number of officers, in addition to the five officers that were convicted as a result of the investigation. See Exhibit E, Investigative Report of Sergeant Betz Affidavit attached to

plaintiff's Brief in Opposition to Defendants' Motion for Summary Judgment. Due to grand jury secrecy, the identity of those officers who were not charged, as well as the identity of their accusers has been withheld. **See** Exhibit D, FBI 302 Reports attached to plaintiff's Brief in Opposition to Defendants' Motion for Summary Judgment. In addition, the Hartford Police Department has indicated that it lost its entire file relating to this investigation, and, therefore, does not know the names of the other prostitutes and officers. However, after defendants petitioned the United States Attorney's Office for a copy of its investigative file, the defendants were only provided the three page Investigative File of John Betz. See Exhibit E, of plaintiff's Brief in Opposition to defendants' Motion for Summary Judgment, Sergeant Betz's Investigative File. Presumably, Exhibit E is the entire investigatory file of the Hartford Police regarding this investigation prior to December of 1998.

Material provided by Assistant United States Attorney, James Glasser and Sergeant Betz Investigative File demonstrate that the allegations of sexual assaults against prostitutes included complaints by several other prostitutes against Hartford police officers, other than the five officers convicted pursuant to the subject federal investigation. See Federal Bureau of Investigation 302 reports, attached to plaintiff's Brief in Opposition to Defendants' Motion for Summary Judgment as Exhibit D and Exhibit E, John Betz's Investigative File and Exhibit C, Plaintiff's Grand Jury Testimony pp. 17-28, 48-49, 55. The volume of redacted material which include the names of other

6

prostitutes and officers establishes a very widespread pattern of sexual misconduct by

Hartford police officers.  See also Exhibit C , Plaintiff's Grand Jury Testimony attached

to plaintiff's Brief in Opposition to Defendants' Motion for Summary Judgment and

Exhibit D, FBI 302 Reports attached to plaintiff's Brief in Opposition to Defendants'

Motion for Summary Judgment.

**STANDARD OF REVIEW**

"Summary Judgment is appropriate if the record discloses 'that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a

matter of law.'" (quoting Fed R. Civ. 56 (c)). "The pleadings, depositions, admissions

and answers to interrogatories, together with affidavits, must demonstrate that no genuine

issue of material fact remains." Inferences from the facts are drawn most favorable to the

non-movant.  If the record as a whole could not lead a rational trier of fact to find for the

non-movant then there is no genuine issue for trial." Vera v. Tue, 73 F.3d 604 (5th Cir.

1996).  This standard requires this court to:

(1) resolve direct factual conflicts in favor of the nonmovant, (2) to assume as true

all facts supporting the nonmovant which the evidence tended to prove, (3) give the

nonmovant the benefit of all reasonable inferences, and (4) deny the motion if the

evidence so viewed would allow reasonable jurors to differ as to the conclusions that

could be drawn.  <u>Pumps and Power Co., v. Southern States Indus.</u>, 787 F.2d 1252, 1258 (8th Cir. 1986).

**ARGUMENT**

The facts in this case have not been stipulated to for the purpose of the court's decision regarding Summary Judgment and many facts are hotly contested.  Defendants' have attached to their Brief in Support of Defendants' Motion for Summary Judgment a number of self serving affidavits from the named defendants' and other officers.  Self-serving affidavits cannot alone establish that there no genuine issues of material fact exist.  In deciding a Summary Judgment Motion the court must view the facts in the light most favorable to the plaintiff.

There are many facts which demonstrate  that the plaintiff's civil rights have been violated by a pervasive and consistent pattern of Hartford police officers assaulting prostitutes.   It is not contested that five Hartford police officers were convicted of sexual assault and/or related crimes in connection with sexual misconduct against the plaintiff.  <u>See</u> Exhibit A, Plaintiff's Affidavit ¶ ¶ 47-48 attached to plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment.  In addition, Chief Croughwell  failed to remedy the denial of plaintiff's civil rights after he became aware of the civil rights violations.  <u>See</u> Exhibit A, Plaintiff's Affidavit ¶¶ 23-29, attached to plaintiff's Brief in Opposition to Defendants' Motion for Summary Judgment.

8

The joint state, federal and Hartford Police Department investigation demonstrates that the problem in the Hartford Police Department was systemic and so pervasive that the department was unable to police itself and had to seek the help of an outside agencies to investigate it. However, the Hartford Police Department always had the obligation to remedy the wrong caused by its own officers once it became aware of the civil rights violations.

**SUPERVISORY LIABILITY**

The issue in this case in regards to supervisory liability of Chief Croughwell is not only whether he had personal knowledge that Hartford police officers were sexually assaulting prostitutes, and failed to remedy the same, but also whether the pattern of behavior by Hartford police officers in sexually assaulting prostitutes was so persistent and pervasive that knowledge can legally be imputed Chief Croughwell and the City of Hartford.

Once Chief Croughwell was made aware that unconstitutional practices were occurring on large scale, he failed to remedy the violations, and failed to conduct any investigation for more than three months after plaintiff gave her statement to Hartford police officers.

In this case, plaintiff is alleging that under the facts presented, Chief Croughwell is liable for the civil rights violations which were perpetrated on her by Hartford police officers under four theories.

9

A supervisor can clearly be held liable for failure to remedy constitutional violations after being notified of them, if he had the ability to prevent the violation. **See** Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995).

A supervisor may also be held liable if he created a custom or policy under which civil rights violations occurred or allowed the continuance of such policy or custom.

Supervisors may also be liable if he is grossly negligent in supervising subordinates, who committed the wrongful acts.

Finally, in this case, a supervisor may liable if he exhibits deliberate indifference that civil rights violations are occurring.

Sergeant Betz's Investigative report clearly establishes and the Chief acknowledges that he was on notice that civil rights violations were occurring. The defendants' Chief Croughwell and the City of Hartford, Motion for Summary Judgment does not allege that the defendant's took any steps to stop the assaults on the plaintiff. Nor do the defendants allege that they conducted any investigation after August 19, 1998 and before December 2, 1998. They simply rely on the fact that plaintiff, during her initial interview, although able to give some descriptions, was not able to specifically give the names of the officers who assaulted her, even though the interview was conducted in a van on the street and no department photos were available. Defendants' failure to investigate this matter properly resulted in the plaintiff's civil rights being

10

denied again three months after her August 19, 1998, interview. **See** Exhibit C,

Plaintiff's Grand Jury Testimony dated January 6, 1999, pp. 37-45 attached to plaintiff's

Brief in Opposition to Defendants' Motion for Summary Judgment.

 The defendants' also claimed that they contacted state and federal authorities

immediately, after Chief Croughwell was put on notice that at least five prostitutes, over a

period of several years, had been sexually assaulted by several Hartford Police Officers.

However, the affidavit of Michael Dillulo, attached to defendants' Brief in Support of

Defendants' Motion for Summary Judgment, as Exhibit F, indicates that the task force

was not formed until later part of October 1998, more than two months after the Chief

Croughwell was placed on notice of the sexual assaults.  Waiting two months to begin a

investigation of sexual assaults being performed by Hartford police officers on numerous

women would justify a jury finding that Chief Croughwell was deliberately indifferent to

the violation of plaintiff's civil rights and failed to remedy the wrong.

 In addition, the department did not issue any general warning to its officers

regarding their contact with prostitutes.  Nor did the Chief issue any orders or policy

statements indicating  that inappropriate contact with prostitutes was against department

policy.  Simply asking for the creation of a joint task force of the Hartford Police

Department, the State's Attorneys Office and U. S. Attorney's Office, two months after

being put on notice of the civil rights violation, is not sufficient to insulate the

defendant's from liability for the lawless acts of its officers.  Especially in light of the fact

that the defendants' had actual notice that several prostitutes were being sexually assaulted.  See Exhibit E, Investigative File of John Betz attached to plaintiff's Brief in Oppossition to Defendant's Motion for Summary Judgment E.  Inspector Dillulo's statement directly contradicts Chief Croughwell's assertion that a Joint Task Force was created immediately.  **See** Affidavit of Michael Dillulo and Chief Croughwell attached to defendants' Brief in Support of Defendant's Motion for Summary Judgment, attached hereto as Exhibit F and C, respectively.

"An obvious need [for more or better supervision] may be demonstrated through proof of repeated complaints of civil rights violations; deliberate indifference may be inferred if the complaints are followed by no meaningful attempt on the part of the municipality to investigate or forestall further incidents." Chew v. Gates, 27 F.3d 1432, (9th Cir. 1994), Vann v. City of New York, 72 F.3d 1040, 1049 (2d Cir. 1995).

## THE COURT DID NOT ERR BY DENYING CHIEF CROUGHWELL'S MOTION FOR SUMMARY JUDGMENT

### A.    THE COURT DID NOT OVERLOOK THE CASE LAW GOVERNING SUPERVISORY LIABILITY IN ITS JANUARY 26, 2005, RULING

The court in its January 26, 2005, ruling did not overlook the case law governing supervisory liability.  The defendants' allege that the Chief Croughwell authorized an investigation immediately and assigned a sergeant to he best suited to handle the investigation.  However, defendant fails to mentioned that no further investigation was

conducted until December 2, 2005, when members of the joint task force began their work. The Hartford Police were still obligated to investigate this matter and remedy the wrong.

In <u>Amnesty America v. Town of West Hartford</u>, 361 F.3d 113 (2d 2004) the Second Circuit held:

"Thus when a subordinate municipal official is alleged to have committed the constitutional violation, municipal liability turns on the plaintiffs' ability to attribute the subordinates' conduct to the actions or omissions of higher ranking officials with policymaking authority. One means of doing so, of course, is to establish that a policymaker ordered or ratified the subordinates actions. See <u>Weber v. Dell</u>, 804 F.2d 796, 803 (2d Cir. 1986) (holding that liability could be premised on sheriff's ordering of unconstitutional strip search. Another method of implicating a policymaking official through subordinates ' conduct is to show that the policymaker was aware of the subordinates unconstitutional actions, and consciously chose to ignore them, effectively ratifying the actions. See e.g., <u>Sorlucco v. New York City Police Dep't</u>, 971 F.2d 864, 870-71 (2d Cir. 1986) (stating that municipal liability lies where the subordinate's misconduct is "so manifest as to imply constructive acquiescence of senor policymaking officials"). Thus where a policymaking official exhibits deliberate indifference to constitutional deprivations caused by subordinates, such that official inaction constitutes a "deliberate choice", that acquiescence may "be properly thought of as a city 'policy or

custom' that is actionable under § 1983. "City of Canton, 489 U.S. at 388 (citations

ommitted); See also Vann v. City of New York, 72 F.3d 1040, 1049 (2d Cir. 1995), Jeffes

v. Barnes, 208 F.3d 49, 63 (2d Cir. 2000) (holding that sheriff's acquiescence in

unconstitutional retaliation could be inferred from his tolerance and encouragement of

harassment of plaintiffs). Moreover, because a single act on a policymaker's part is

sufficient to create municipal policy, a single instance of deliberate indifference to

subordinate's actions can provide a basis for municipal liability." The Court went on to

state: The means of establishing deliberate indifference will vary given the facts of the

case and need not rely on any particular factual showing . The operative inquiry is

whether the facts suggest that the policymaker's inaction was the result of a "conscious

choice" rather than mere negligence . City of Canton, 489 U.S. at 389 (internal quotation

marks omitted); see also Bd. Of County Commissioners v. Brown, 520 U.S. 397, 410,

137 L.Ed. 2d 626, 117 S. Ct. 1382 (1997) (stating that "deliberate indifference ... requires

proof that a municipal actor disregarded a known or obvious consequence of his action"

or inaction (internal quotation marks omitted). Thus plaintiff's evidence must establish

only that a policymaking official had notice of a potentially serious problem of

unconstitutional conduct, such that the need for corrective action was "obvious" Vann, 72

F.3d at 1049, and the policymaker's failure to investigate or rectify the situation

evidences deliberate indiffernce, rather than mere negligence or bureaucratic inaction."

The Second Circuit found that a genuine issue of material fact exists as to whether

the Town of West Hartford and the Chief of Police could be held liable for failing to

supervisor its police officers and failing to stop them from using excessive force.

There is no evidence submitted in the defendant's Motion for Summary Judgment as to

when and if the U.S. Attorney Office took charge of the investigation or when the

investigation began.  In fact, the defendant's have failed to produce any affidavit,

deposition testimony or other evidence from any federal official indicating when they

became involved in the investigation and/or which agency was in charge of the

investigation.

Defendant Croughwell argues that even though he had notice of sexual assaults in

August 1998, his act of simply assigning an officer to act as a liaison between the State's

Attorney's Office and the U.S. Attorney's Office makes him immune from liability for

failure to remedy the wrong.

The first interview conducted by any state, federal official or Hartford Police

detectives occurred three months later in December, 1998.  The cases cited above have

held that Chief Croughwell did owe a duty to protect the plaintiff after receiving

information that sexual assaults were occurring.   In this case, the wrong was clearly not

remedied and his failure to take any action prior to the State Attorney and U.S. Attorney

and the FBI beginning its investigation in December of 1998, is not objectively

reasonable in light these horrendous complaints. The only reports in the possession of the

Hartford Police Department is Sergeant Betz report dated August 20, 1998, **See** Sergeant

Betz Investigative Report attached to plaintiff's Brief in Opposition to Defendants' Motion for Summary as Exhibit E.

Interestingly, during discovery in this case the defendant's have claimed that their entire file was turned over to the Government and they did not retain a copy, which is a clear indication of sloppy police work. However, when the defendants petitioned the United States Attorney's Office for its file, the only thing that was turned over was Sergeant Betz' three page investigative file which is dated August 20, 1998, attached to plaintiff's Brief in Opposition to Defendants' Motion for Summary Judgment, as Exhibit E.

On December 8, 1998 Officer Franco Sanzo and Sergeant Christopher Lyons of the Hartford Police Department conducted an interview of the plaintiff, after she had been interviewed by Special Agent Lisa Tuttie and Inspector Michael Dillulo. The Hartford Police Department was conducting its own parallel investigation. **See** affidavits of Christopher Lyons and Officer Franco Sanzo attached to defendants, Brief in Support of Defendants' Motion for Summary Judgment, as Exhibit F and J. Plaintiff did not trust Lyons and Sanzo. The plaintiff thought that Lyons ans Sanzo were trying to intimidate to prevent her from cooperating with the federal investigation. **See** plaintiff's Affidavit attached to plaintiff's Brief in Opposition to defendants' Motion for Summary Judgment as Exhibit A ¶ 39-42.

Chief Croughwell and the City of Hartford are responsible for supervising the

entire police department. Plaintiff submits two arguments why the Chief should be found liable. First, there is adequate evidence that a persistent pattern of police corruption involving sexual assaults of prostitutes. Knowledge of the pattern can be imputed to Chief Croughwell and the City of Hartford because of the widespread and pervasive pattern of civil rights violations in the form of sexual assaults on prostitutes. Thus a finding that there is a question of fact as to whether there was a widespread and persistent pattern of police corruption in the form of the coercion of prostitutes to engage in sexual relations under threat of arrest, would preclude a finding of qualified immunity. Since no reasonable police officer could believe that allowing officers he supervises to commit sexual assaults, would be lawful.

Although, the personal involvement of a supervisor must be proved in the alleged constitutional violation, that does not mean that the supervisor must be involved in the constitutional violation or be present when it occurs. As the defendants point out in their Brief, personal involvement may be established in a number of ways. In this case, the plaintiff is claiming that Chief Croughwell after being advised of the violation of plaintiff's civil rights failed to remedy the same. In addition, the plaintiff is alleging that Chief Croughwell was 'deliberately indifferent' to the plaintiff's rights because there is a question of fact whether Chief Croughwell failed to act promptly on information indicating that plaintiff's civil rights were being violated. Plaintiff also alleges that Chief Croughwell was grossly negligently in his supervision of subordinates. Finally, the

17

plaintiff is alleging that Chief Croughwell created a policy or custom under which unconstitutional practices occurred, or allowed a the continuance of such policy or custom. **See** Colon v. Coughlin, 58 F. 3rd 865, 873 (2d Cir. 1995). Therefore, the plaintiff has alleged four separate theories of supervisory liability against Chief Croughwell.

The defendant, misinterprets the Second Ccircuits ruling in Poe v. Leonard, 282 F.3d 123 (2d Cir. 2002), which turns on the question of whether the Leonard had notice of the Trooper's propensity to commit acts of misconduct against women. Unlike this case, the defendant in Poe stipulated to the plaintiff's statement of facts. The court in essence ruled that the defendant did not have notice of the wrongful conduct of the state trooper in filming a women in an inappropriate manner.

Here, Chief Croughwell had notice that sexual assaults were being perpetrated on at least five women on a continuous basis over a period of years. Yet upon receiving plaintiff's complaint, the investigation was halted and did not begin again until December, 1998.

The question is whether a reasonable officer could believe that doing nothing while a joint HPD, state and federal task force was formed, which took almost three months would not create a substantial risk of harm to the complaining women.

Clearly, there was a substantial risk of harm to the plaintiff and Chief Croughwell, as head of the Hartford Police Department, had the duty and the power to remedy the

wrong. Chief Croughwell's failure to remedy the wrong resulted in the plaintiff being sexually assaulted again. The plaintiff has also sufficiently asserted a violation of her substantive due process rights because the officers actions sufficiently "conscience-shocking". **See** Poe v. Leonard, 282 F.3d 123, 139 (2d Cir. 2002). The plaintiff simply needs to show a causal link between Croughwell's inaction and the plaintiff's injury. **See McCann v. Coughlin**, 698 F.2d 112, 125 (2d Cir. 1983).

The defendant's have not stipulated to a state of facts which would preclude an interlocutory appeal of the court's finding that there are question facts, regarding whether the chief failed to remedy the wrong after being advised of the violation.

The defendants' can not maintain that the plaintiff did not have a clearly establish right under the fourth and fourteenth amendments to the United States Constitution, to be free from sexual assault. **See** West v. Waymire, 114 F.3d 646 (7th Cir. 1997). Nor do the plaintiff's claim that Chief Croughwell did not have a duty to remedy the wrong. This case, presents a question of fact whether Chief Croughwell failure to conduct an investigation for a three month, period presents a jury question whether.

Clearly, Chief Croughwell lack of action after being advised of the wrong creates a triable issue whether he was deliberately indifferent to the violation of plaintiff's civil rights and failed to remedy the wrong. There is no claim by the defendants that any investigation was conducted between August 19, 1998 and December 2, 1998. There is credible evidence that the Joint Task Force was not created before late October, 1998 and

19

that no investigation began until December 2, 1998, when defendant was interviewed by Inspector Dillulo and Agent Tuttie.

The record reflects that the pattern of assaults by Hartford police officers on prostitutes was so widespread so as to allow a reasonable jury to find that it constituted custom or practice which was condoned and by Chief Croughwell and City of Hartford, which provides a separate theory of supervisory liability.

### SECOND CIRCUIT AND DISTRICT OF CONNECTICUT CASE LAW ON SUPERVISORY LIABILITY DOES NOT SUPPORT THE ENTRY OF SUMMARY JUDGMENT.

The facts of the instant case are distinguishable from the facts in the matter of Poe v. Leonard, 282 F. 3d 123 (2d. Cir. 2002). The Second Circuit's decision in Poe v. Leonard, turned on the issue of whether the trooper's supervisor had notice that civil rights violations were occurring. The court found that the supervisor did not have notice that the unconstitutional violations were occurring. In this case, it is undisputed that Chief Croughwell was well aware that civil rights violations were occurring on a large scale. It is also, undisputed that Hartford Police Department conducted not investigation after the Betz investigation which was put on hold on August 20, 1998, See Exhibit E, Betz Investigative Report attached to plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment. Chief Croughwell had easily available means to stop the assault. The Chief could have issued an order specifically advising that contact with prostitutes of sexual nature will not be tolerated and will be punished criminally.

20

Chief Croughwell at the very least should have assigned officers to investigate this matter, instead Chief Croughwell did nothing.

Likewise, the court's ruling in <u>Hayut v. State Univ. of New York</u>, 352 F.3d 733, 753 (2d Cir. 2003), "personal involvement" for supervisory liability turns on whether the supervisor has notice that civil rights violations were occurring. Chief Croughwell had a duty to act immediately to stop these egregious civil rights violations. The Chief failed to conduct an immediate investigation and is responsible for the violation of plaintiff's civil rights.

Defendants' also fails to point out that no matter what the chief did after he found out about the civil rights violations, it would not effect his responsibility if there was a widespread and persistent pattern of sexual assaults of prostitutes by Hartford police officers knowledge of which can be imputed to Chief Croughwell and the City of Hartford. For instance, if the jury believes that plaintiff's testimony that she had been repeatedly assaulted by eight to ten Hartford Police Officers over a four year period that alone is sufficient to create a triable issue as to whether Chief Croughwell allowed a widespread and persistent pattern of sexual assaults against prostitutes, to foster and continue.

## DELIBERATE INDIFFERENCE

To demonstrate deliberate indifference defendant argues the plaintiff must show: (1) a grave risk of harm, (2) defendant's actual or constructive knowledge of that risk, and

21

(3) his failure to take easily available measures to address the risk.  Camilo-Robles v. Hoyos, 151 F.3d 1, 7 (1st Cir. 1998).

The grave risk of harm to the plaintiff is being sexually assaulted, under threat of arrest, in violation of here rights under the Fourth and Fourteenth Amendment to the United States Costitution.  Chief Croughwell admits he had actual notice of the civil rights violations.  The Chief failed to take measures easily available to him to investigate and to order his officers not to have contact of sexual nature with prostitutes.  Just beginning an investigation does not immunize Chief Croughwell from liability. Instead of continuing the investigation, Chief Croughwell halted the Hartford Police Department Investigation after August 19, 1998, and no investigation was conducted by the joint task force until December 2, 1998, until then the Hartford Police Department was in charge of the investigation. Plaintiff sexual assault occurred in November, 1998.

Defendants do not allege that they made any attempt to contact the plaintiff after August 19, 1998 prior to December 2, 1998, therefore, her incarceration for 28 days is a red herring designed to distract the court. Further, the plaintiff on many occasions was interviewed while incarcerated..  See 302 Reports attached to plaintiff's Brief in Opposition to defendant's Motion for Summary Judgment as Exhibit D.

The Second Circuit in Amnesty America v. Town of West Hartford., 361 F.3d 113 (2d Cir. 2004), made it clear that a Police Chief and the Town of West Hartford could be held liable for failure to train and supervise officers under his control.  The court

22

held: "In this context, plaintiffs must establish McCue's deliberate indifference by showing that "the need for more or better supervision to protect against constitutional violations was obvious but that McCue made "no meaningful attempt" to forestall or prevent the unconstitutional conduct. Vann, 72 F.3d at 1049. Id. at .

### The investigation by the HPD in Response to Citizen Complaints does not require entry of Summary Judgment in Favor Chief Croughwell and Hartford

The fact that the defendants had in place a method to funnel Citizens Complaint of sexual abuse does not require the entry of summary judgment. Plaintiff swore that she made a claim of sexual abuse in 1994 which was never investigated by HPD.

If a company with a similar number of employees as the Hartford Police Department had fourteen (14) investigated cases of sexual misconduct in a four year period they would know they have a serious problem and there was the need for greater supervision.   The volume of complaints of misconduct suggests a systemic problem.

Combined with the fact that five Hartford police officers were convicted of sexual misconduct with the plaintiff in four cases and another women in the fifth case, creates a genuine question of fact as to whether plaintiff can establish a 'widespread and persistent pattern' of sexual assaults by Hartford police officers against prostitutes sufficient to impute knowledge to Chief Croughwell and the City of Hartford. Further, the fact that there was a complaint process does not establish that there was not a widespread and persistent pattern of Hartford police officers sexually assaulting prostitutes.

23

It interesting that the defendants' claim they investigated 14 complaints of sexual abuse, where is the investigation of the complaints of five women and the plaintiff, who reported being sexually assaulted on a continuous basis, by numerous officers, in defendants' statistics. The Hartford Police Department never attempted to quantify the number of times each prostitute had been sexually assaulted by Hartford police officers since it would have simply put there purported statistics off the charts. The plaintiff alone would have accounted for dozens of incidents of Hartford police officer sexually assaulting her over a four year period, therefore, defendant's statistics are misleading and irrelevant.

As soon as the investigation started, the flood gates of complaints came forth. How much more can a plaintiff be expected show than six women, who were sexually assaulted on a continuance basis by upward of eight to ten officers, over a four year period.  **See** Exhibit D, FBI 302, attached to plaintiff's Brief in Opposition to Defendants' Motion for Summary Judgment.  After the investigation was halted by Chief Croughwell there were no more complaints because there were no HPD officers to take them.

**There is a Genuine Issue of Material Fact As To Whether Plaintiff Can Establish A Claim of Liability As To The City of Hartford.**

1.     **Unconstitutional Practice or Costume**

The plaintiff is claiming that the City of Hartford allowed a practice of civil rights violations so widespread to impute constructive knowledge to its policymakers.

24

Mettler v. Whitledge, 165 F. 3d 1197, 1204 (8th Cir. 1999). Five prostitutes have been identified by name as being sexually assaulted by Hartford police officers over a long period of time. Many other prostitutes made complaints of sexual exploitation during the federal investigation but their names have not been released due to grand jury secrecy. See Exhibit D, FBI 302 Reports and Exhibit E, Investigative Report of Sergeant John Betz attached to plaintiff's Brief in Opposition to Defendants' Motion for Summary Judgment. The plaintiff testified and states in her affidavit that she was repeatedly raped over a four year period by upwards of ten police officers. See Exhibit A, Plaintiff's Affidavit ¶ 6 and 7 and Exhibit C, Plaintiff's Grand Jury pp.10-45.

Many other prostitutes were identified during the course of a Federal Grand Jury Investigation as having been repeatedly raped by Hartford police officers but were unable to positively identified the officers that assaulted them. Yolanda Santiago, a women identified in the federal investigation and who is a plaintiff in another police misconduct case involving her sexual assault, led to the conviction of a fifth Hartford police officer Julio Comacho. See Exhibit B, Affidavit of Yolando Santiago, attached to plaintiff's Brief in Opposition to Defendants' Motion for Summary Judgment. Officer Camacho was accused by several women of sexual assault and pled guilty in federal court. See Affidavit of Yolando Santiago, attached to plaintiff's Brief in Opposition to Defendants' Motion for Summary Judgment as Exhibit B. In addition, Stacy Richards, another prostitute whose complaint led to the federal investigation, alleged that she had

been sexually assault on at least two occasions. See Exhibit D of, defendants' Brief in Support of Defendants' Motion for Summary Judgment, Affidavit of Franco Sanzo ¶ ¶ 5 and 6.

Plaintiff previously reported that she was being sexually assaulted in 1994 by Hartford police officers to a Hartford police lieutenant who transported here to Headquarters. See Exhibit A, Affidavit of Plaintiff ¶ 11 and Exhibit D, 302 report dated March 2, 1999, attached to plaintiff's Brief in Opposition to Defendants' Motion for Summary Judgment. Plaintiff's complaint of sexual assault was never investigated nor is included in the list of sexual assault complaints contained in the self serving affidavit attached to defendants' Brief in Support of Their Motion for Summary Judgment as Exhibit P, Affidavit of Neil Dryfe.

    a.       **Failure to Supervise, Discipline or Investigate**

In Monell and its progeny, the Supreme Court established that municipal liability under § 1983 may be premised upon a municipal custom, policy or persistent practice, or upon deliberately indifferent supervision that is the moving force behind the violation of the plaintiff's federally protected rights. See e.g., City of Canton v. Harris, 489 U.S. 378 (1989). The defendants have produced no affidavits or documentation refuting the plaintiff's allegations relating to lack of supervision. Therefore the court must accept as true the allegations in the complaint pertaining to lack of supervision.

In John Doe v. Hillsboro, 81 F.3d 1395 (5th Cir. 1996) the court held:

"To plead a valid failure-to-supervise claim, Doe must allege facts sufficient to present the following elements:(1) the defendants learned of facts or a pattern of inappropriate sexual behavior by subordinates pointing plainly toward the conclusions that subordinate were sexually abusing students; (2) the defendants demonstrated deliberate indifference toward the constitutional rights of the student by failing to take action that was obviously needed to prevent or stop the abuse; and (3) such failure caused a constitutional injury to the student." Id.

Defendant has misstated  plaintiff's argument regarding the failure of Chief Croughwell, and the City of Hartford to adequately train, supervise and discipline their officers.  Plaintiff would submit that if there was adequate supervision, training and discipline of the officers involved in sexually assaulting the plaintiff, they would never have been able to continue to assault the plaintiff over a long period of time nor would they have felt safe in committing the assaults.  Further, had the defendants, adequately supervised and investigated the plaintiff's initial complaint in 1994 and again in August of 1998, the final sexual assault would never have taken place.  See plaintiff's Affidavit attached to plaintiff's Brief in Opposition to Defendants' Motion for Summary Judgment as Exhibit A, ¶¶ 11-17 and Exhibit D, FBI 302 reports dated March 2, 1999. Their failure to remedy the civil rights violations amounts to deliberate indifference.

**Failure to Train**

The defendants have offered no contradictory affidavits or materials to support its

27

argument that plaintiff can not maintain an action based on the City of Hartford and Chief

Croughwell's failure to train its officers. There is no indication of the training the

defendants and the officers who committed sexual assault received; therefore, the

allegations of the Complaint must be taken as true. In this case it is obvious that gender

sensitivity training would have been helpful in deterring the officers involved

from committing sexual assaults against prostitutes.

There is a genuine issue of material fact whether the defendant's training or lack

thereof, resulted in a deprivation of plaintiff's civil rights. There are genuine issues of

material fact regarding whether the plaintiff can establish the elements of a

cause of action against the City of Hartford, Chief Croughwell and Deputy Chief Flarety

for failure to train the officers who committed sexual assaults and the departments

supervisors.

### Whether the Defendants, are Entitled to Qualified Immunity Present Genuine Issues of Material Fact

The defendants' are not entitled to qualified immunity based on the facts of this

case. The Second Circuit has held:

As we explain in greater detail below, that precedent clearly establishes that for a

supervisor to be liable under section 1983, for his failure to inquire he must first have

been on notice that his subordinate was prone to commit some unconstitutional or

unacceptable behavior. Such notice could be actual (for example , awareness of prior

28

deprivations in a related context), or it could be constructive (for instance, notice arising from a preexisting duty). In <u>McCann v. Coughlin</u>, 698 F.2d 112, 125 (2d Cir. 1983) the Second Circuit held that a prison commissioner and superintendent could be held liable for their gross negligence and their deliberate indifference to the constitutional rights of inmates, as indicated by their having actual or constructive notice that unconstitutional practices were taking place and their failure to act on the basis of that notice.

In this case, it is not controverted that the Chief Croughwell had actual notice that sexual assaults were taking place against prostitutes, including the plaintiff. The Department did not conduct a competent investigation or remedy the violations. Instead they contacted federal and state authorities and a joint task force was convened. This task force took months to set up, while the rapes continued. As a result, the plaintiff was sexually assaulted by Officer Jesus Rivera, three months after she had reported the assaults for the second time. <u>See</u> Exhibit A, Plaintiff's Affidavit ¶ 26 attached to plaintiff's Brief in Opposition to Defendants' Motion for Summary Judgment. Chief Croughwell was also aware of the sexual assaults reported by Stacy Richard and Dawn Suhaki. <u>See</u> Exhibit E, Sergeant Betz Investigative file attached to plaintiff's Brief in Opposition to Defendants' Motion for Summary Judgment. Admittedly, the plaintiff was not contacted again until three months later by Agent Lisa Tuttie and Inspector Michael Dilullo on December 2, 1998. In the case of Chief Croughwell, he can not escape liability by alleging that he referred the matter to the FBI, and did not conduct his own

29

investigation or follow up with the plaintiff in an attempt to remedy the violations.

A jury would be justified in finding that the failure of Chief Croughwell to conduct an immediate investigation amounted to deliberate indifference or gross negligence. The facts of the instant case present a triable issue of material fact as to whether the Chief Croughwell's failure to conduct a competent investigation amounted deliberate indifference or gross negligence.

Case law clearly establishes that a supervisor may be liable failure to screen or inquire about his subordinates or into their actions. See e.g., Fiacco v. City of Rensselaer, 783 F.2d 319, 329-31 (2d Cir. 1986) finding sufficient evidence to support a jury's finding that a police chief was deliberately indifferent to his officers' use of excessive force because the evidence showed that the chief failed to exercise reasonable care in investigating several claims of police brutality and instead only conducted a superficial questioning of the accused officers.), cert. denied, 480 U.S. 922, 107 S.Ct. 13484, 94 L.Ed. 2d 698 (1987). There is no requirement that the plaintiff identify the officers involved by name, only that the supervisory officers have notice of the civil rights violations and failed to remedy the same. Chief Croughwell failed to exercise reasonable care in investigating several claims of sexual assault. Here, the Chief conducted only a superficial investigation.

**CONCLUSION**

For the foregoing reasons, the plaintiff respectfully submits that defendants'

30

Motion for Reconsideration be denied.

PLAINTIFF, JANE DOE II

By: *Wesley S. Spears*
Wesley S. Spears
53 Russ Street
Hartford, CT 06106
(860) 724-0505 Tel
(860) 249-1533 Fax
Federal Bar #01516

## CERTIFICATION

This is to certify that a copy of the foregoing was mailed postage prepaid on this

8th day of April, 2005 to:

James Szerejko
Halloran & Sage
225 Asylum Avenue
Hartford, CT 06103

*Wesley S. Spears*
Wesley S. Spears

31