FILED

2005 APR 28 A 9: 46

U.S. DISTRICT COURT
BRIDGEPORT, CONN

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JANE DOE II | : | CIVIL ACTION |
| | : | 3:01-CV-1026 (AHN) |
| V. | : | |
| CITY OF HARTFORD, ET AL | : | APRIL 27, 2005 |

### REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE CITY OF HARTFORD'S AND CHIEF JOSEPH CROUGHWELL'S MOTION FOR RECONSIDERATION

James J. Szerejko, Esq.
CT Fed. Bar No. 04326
**HALLORAN & SAGE LLP**
One Goodwin Square
225 Asylum Street
Hartford, CT 06103
Tel: (860) 522-6103
Fax: (860) 548-0006

*Counsel for Co-Defendants,
City of Hartford and
Chief Joseph Croughwell*

**TABLE OF CONTENTS**

|  |  | PAGE |
|---|---|---|
| PRELIMINARY STATEMENT | | 1 |
| ARGUMENT | | 1 |
| I. | THE PLAINTIFF HAS FAILED TO ESTABLISH THE DELIBERATE INDIFFERENCE OR GROSS NEGLIGENCE NECESSARY TO SUPPORT A SECTION 1983 CLAIM AGAINST CHIEF CROUGHWELL AND HARTFORD | 1 |
| II. | THE PLAINTIFF HAS FAILED TO ESTABLISH THAT EITHER CHIEF CROUGHWELL OR HARTFORD HAD NOTICE OF THE ALLEGED CONSTITUTIONAL VIOLATIONS | 4 |
| III. | THE PLAINTIFF HAS FAILED TO ESTABLISH A CLAIM FOR FAILURE TO TRAIN, SUPERVISE, INVESTIGATE OR DISCIPLINE | 5 |
| IV. | CHIEF CROUGHWELL IS ENTITLED TO QUALIFIED IMMUNITY | 6 |
| V. | THE PLAINTIFF HAS FAILED TO ESTABLISH A <u>MONELL</u> CLAIM | 6 |
| VI. | THE CASE LAW CITED BY THE PLAINTIFF SUPPORTS THE ENTRY OF SUMMARY JUDGMENT IN FAVOR OF HARTFORD AND CHIEF CROUGHWELL | 7 |
| VII. | THE PLAINTIFF FAILS TO RECOGNIZE THE STANDARD GOVERNING SUMMARY JUDGMENT | 9 |
| CONCLUSION | | 10 |

**PRELIMINARY STATEMENT**

Pursuant to Local Rule 7(d), the co-defendants, the City of Hartford and Chief Joseph Croughwell, submit this reply memorandum of law in further support of their motion for reconsideration of the Court's January 26, 2005 Ruling. For the reasons set forth below and in their initial memorandum, the Court should grant reconsideration and enter summary judgment in favor of Hartford and Chief Croughwell.

**ARGUMENT**

**I.   THE PLAINTIFF HAS FAILED TO ESTABLISH THE DELIBERATE INDIFFERENCE OR GROSS NEGLIGENCE NECESSARY TO SUPPORT A SECTION 1983 CLAIM AGAINST CHIEF CROUGHWELL AND HARTFORD**

Putting aside the conclusory and unsupported allegations, of which there are several,[1] the plaintiff's opposition amounts to the following -- Hartford and Chief Croughwell are liable under 42 U.S.C. § 1983 because there is no evidence that there was any investigation into her August 19, 1998 complaint between August 20, 1998 and December 2, 1998, when she was interviewed by a FBI agent working with a Joint Task Force. (Pl.'s Mem. at 19-20)

The record does not, however, support the plaintiff's broad-sweeping allegations. Specifically, contrary to the plaintiff's claim that the task force was not formed until late October, 1998, the unchallenged evidence in the record indicates that the Joint Task Force was created no later than "early" October 1998, after Chief Croughwell had consulted with federal

---

1/   For example, despite the Court's having stricken paragraphs 10, 24, 26, 46-47. 49-51 of her affidavit by its October 16, 2003 endorsement order, the plaintiff cites to those paragraphs at pages 8 and 29 of her opposition. Those citations should be disregarded and to the extent necessary stricken. The plaintiff opposition also ignores the Court's ruling that "the sole actionable incident is Rivera's sexual assault in November or December 1988." (1/26/05 Ruling, at 6 n.3)

Moreover, there is no evidence to support the plaintiff's allegation that Chief Croughwell "halted" the investigation after August 19, 1998. (Pl.'s Mem. at 18) Nor is there any evidence to support her statement that there was a parallel investigation being conducted by the HPD. (Id. at 16)

and state law enforcement officials. (Ex. C., Croughwell Aff. ¶ 6; Ex. F., Dilullo Aff. ¶ 3)[2] There is also no evidence or authority submitted by the plaintiff to contradict Chief Croughwell's sworn statement that the United States Attorney's Office and the FBI became the lead agencies on the investigation once the Joint Task Force was formed. (Croughwell Aff. ¶ 7) The record confirms that the prosecutions and convictions that resulted from the task force's investigation were federal. (Ex. Q, Indictment) Although she is apparently referring to federal agents, the plaintiff concedes that during the approximately one month period she was incarcerated, October 26 through November 24, 1998, she was interviewed "many" times. (Pl.'s Mem. at 22)

Thus, because neither Hartford or Chief Croughwell can be liable for the conduct of an investigation being lead by the U.S. Attorney and the FBI, the plaintiff's opposition raises the issue of whether the apparent lack of investigatory activity, based on the current record, by the Hartford Police Department ("HPD") between August 20, 1998 and early October 1998, constitutes the "deliberate indifference" or gross negligence necessary to establish § 1983 liability as to Chief Croughwell and Hartford. This is a false issue. As demonstrated in the initial memorandum and below, this alleged shortcoming in the investigation does not provide a basis for § 1983 liability. Moreover, under Rule 56, the plaintiff had the burden of producing evidence that there was no investigation being conducted. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Sarus v. Rotundo, 831 F.2d 397, 402 (2d Cir. 1987)(loath to affirm finding of deliberate indifference where "most elementary of discovery procedures" were not pursued). The defendants were not required to prove each day's activity in the investigation. Having failed

---

2/ The plaintiff has submitted no evidence in support of her allegation that the Joint Task Force did not commence its investigation until December 2, 1998. In fact, the plaintiff has previously conceded that she has no evidence as to when the Joint Task Force was created or began its investigation. By her March 8, 2005 motion, she sought leave to depose federal law enforcement officials to discover the date. The Court denied that motion.

2

to present such basic evidence, the plaintiff cannot avoid summary judgment with a mere allegation that there was no activity in the investigation.

Even assuming for the sake of argument that there was no activity during the time period in question, the plaintiff has still failed to present evidence of deliberate indifference or gross negligence. The standard for "deliberate indifference" is a "stringent" one. Board of County Comm'rs v. Brown, 520 U.S. 397, 410 (1997) (2/7/05 Mem., at 13, 29-30) "Deliberate indifference" is a state of mind that is the equivalent of "criminal recklessness." Hernandez v. Keane, 341 F.3d 137, 144 (2d Cir. 2003), cert. denied, 125 S.Ct. 971 (2005). It does not require a police chief or municipality to prevent constitutional violations. See Warren v. District of Columbia, 353 F.3d 36, 39 (D.C. Cir. 2004). Rather, it simply means that faced with knowledge that their agents will or have violated constitutional rights, they may not adopt a "policy of inaction." Id.

Consequently, if a police chief refers a complaint to the unit within the police department that is responsible for investigating alleged police abuses, there can be no basis for an inference of deliberate indifference. Wilson v. City of Chicago, 6 F.3d 1233, 1240-41 (7th Cir. 1993) (Posner, C.J.); Jones v. Ziegler, 894 F.Supp. 880, 890-91 (D. Md. 1995), aff'd 104 F.3d 620 (4th Cir. 1997). See Mettler v. Witledge, 165 F.3d 1197, 1204-05 (8th Cir. 1999). This conclusion is true regardless of whether or not the plaintiff or court disagrees with the ultimate determination of an investigation or with the speed in which that investigation occurs. Wilson, 6F.3d at 1240. See Metler, 165 F.3d at 1205. The final result of an investigation might be second guessed at a later point in time; but it cannot constitute deliberate indifference or gross negligence. See Jones, 894 F.Supp. at 892. The fact that the police department does not investigate the complaint as quickly or as effectively as a plaintiff or a court might, in hindsight, have liked, is irrelevant.

3

Wilson, 6 F.3d at 1240. It certainly does not amount to deliberate indifference or gross negligence. See Poe v. Leonard, 282 F.3d 123, 140 n.14 (2d Cir. 2002).

In the case at bar, the plaintiff has failed to establish that either Chief Croughwell or Hartford intended that she be assaulted in November or December 1998, or at any other time. Thus, she has not established the deliberate indifference or gross negligence necessary to support a § 1983 claim against a supervisor or a municipality.[3] To the contrary, the evidence establishes that the HPD investigated the citizens' complaints it received between January 1993 and December 1998. (2/7/05 Mem., at 9-10 (citing exhibits)) It also establishes that upon Chief Croughwell's direction, the HPD continued an investigation of the August 5, 1998 complaint received from Stacy Richard. (Id. at 10-13) The interview of the plaintiff, who was sought out by the HPD, and another individual on August 19, 1998 was part of that investigation. (Ex. D, Sanzo Aff. ¶ 7; Pl.'s Ex. E, Betz 8/20/98 Mem.) Thus, the plaintiff cannot, as a matter of law, establish the deliberate indifference or gross negligence necessary to support a § 1983 claim. Accordingly, Chief Croughwell and Hartford are entitled to summary judgment.

## II.  THE PLAINTIFF HAS FAILED TO ESTABLISH THAT EITHER CHIEF CROUGHWELL OR HARTFORD HAD NOTICE OF THE ALLEGED CONSTITUTIONAL VIOLATIONS

With regard to the issue of notice, the plaintiff's argument is that because assaults occurred, Chief Croughwell must have known or is to be considered to have knowledge, regardless of the lack of any evidence to support such a conclusion. (Pl.'s Mem. at 9) Her argument is without merit. As discussed in detail in Hartford's and Chief Croughwell's initial memorandum, under Poe, 282 F.3d at 141-42 and Clarke v. Sweeney, 312 F.Supp. 2d 277, 296-

---

3/   See Back v. Hastings on Hudson Union Free Sch. Dist., 365 F.3d 107, 127 (2d Cir. 2004) (evidence did not suggest "'deliberate indifference' of the sort that shows that 'the defendant intended the discrimination to occur.'"); id. at 129 (plaintiff failed to establish that Board's response was "'clearly unreasonable in light of known circumstances.'").

4

97 (D. Conn. 2004), a supervisor cannot be liable absent evidence that he had "notice" of his subordinate's misconduct. (2/7/05 Mem., at 6-9) Absent knowledge, a supervisor is not personally involved in the alleged constitutional violation. In the instant case, there is no evidence that Chief Croughwell had notice that police officers might have been sexually assaulting prostitutes. To the contrary the evidence establishes that upon being informed of Stacy Richard's complaint on August 5 or 6, 1998, he directed Sergeant Betz to continue his investigation; transferred Betz to a division with more capabilities to handle the investigation; and assigned another detective to assist with the investigation. (2/7/05 Mem. at 9-13) Thus, the plaintiff has failed to establish a claim of supervisory liability. See Clarke, 312 F.Supp. 2d at 297 ("because he did not have knowledge of their alleged unlawful acts, [the police chief] may not be held liable for 'gross negligence in supervising subordinates who commit unlawful acts.'").

### III. THE PLAINTIFF HAS FAILED TO ESTABLISH A CLAIM FOR FAILURE TO TRAIN, SUPERVISE, INVESTIGATE OR DISCIPLINE

With regard to her claims for failure to supervise, discipline or investigate, the plaintiff maintains "that if there was adequate supervision, training and discipline of the officers involved..., they would never have been able to continue to assault the plaintiff over a long period of time...." (Pl.'s Mem. at 27) With regard to her failure to train theory, the plaintiff argues that "[t]here is no indication of the training the defendants and the officers who committed sexual assault received; therefore, the allegation in the complaint must be taken as true." (Id. at 28) The plaintiff's arguments are without merit.

In addition to the analysis set forth above and in the defendant's February 7, 2005 memorandum, the plaintiff's claims fail as a matter of law because the plaintiff has cited no evidence that supports any of these theories. In particular, she has not established what training, supervision or investigation would have prevented her alleged assault which occurred after a

5

"chance encounter" with Rivera. (Pl.'s Ex. A, Pl.'s Aff. ¶ 34) The simple recitation that there was a failure to train does not suffice to establish that a municipal custom, or policy caused the plaintiff's injury. See Estate of Davis v. City of N. Richland Hills, 2005 WL 827129, at *6 (5th Cir. Apr. 11, 2005) ("It is not enough to say that more training or different training or supervision would have prevented the result of the ill-fated raid."). The plaintiff must establish what policies, discipline, supervision and training would have prevented the alleged constitutional violation. See Feehan v. Lengyel, 2005 WL 272958, at *2 (D. Conn. Feb. 5, 2005) (granting motion to dismiss). Here, the plaintiff has done no more than to allege that the supervision and training must have been inadequate because if they had been adequate, she would not have been injured. (Pl.'s Mem. at 27-28) These conclusory allegations cannot survive summary judgment. (2/7/05 Mem., at 26-34)[4]

## IV.   CHIEF CROUGHWELL IS ENTITLED TO QUALIFIED IMMUNITY

With regard to Chief Croughwell's qualified immunity defense, the plaintiff has not addressed the merits of his argument. Rather, she claims that because the HPD did not conduct a competent investigation or remedy the alleged civil rights violations, Chief Croughwell is not entitled to qualified immunity. (Pl.'s Mem. at 29-30) As with her other arguments, the plaintiff's amounts to no more than a conclusory statement. As discussed in detail in the initial memorandum, Chief Croughwell is entitled to qualified immunity. (2/7/05 Mem., at 18-21)

## V.    THE PLAINTIFF HAS FAILED TO ESTABLISH A MONELL CLAIM

The plaintiff has produced no evidence of any official policy or custom. Absent such evidence and such a showing, the plaintiff's claim under Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978) fails as a matter of law. See Amnesty America v. Town of West Hartford, 361

---

4/   Moreover, the plaintiff has not challenged Hartford's and Chief Croughwell's analysis which demonstrates that she has not produced any evidence with regard to causation.

6

F.3d 113, 125 (2d Cir. 2004) ("demonstrating that the municipality itself caused or was implicated in a constitutional violation is the touchstone...."). By allowing this case to be submitted to a jury, the Court would be exposing Hartford and Chief Croughwell to the *respondeat superior* liability prohibited under Monell and its progeny. Accordingly, reconsideration is warranted and the Court should enter summary judgment in favor of Hartford and Chief Croughwell.

## VI. THE CASE LAW CITED BY THE PLAINTIFF SUPPORTS THE ENTRY OF SUMMARY JUDGMENT IN FAVOR OF HARTFORD AND CHIEF CROUGHWELL

A review of the cases principally relied upon by the plaintiff reveals that they support the entry of summary judgment in favor of Hartford and Chief Croughwell. First, as discussed in detail in the initial memorandum, Amnesty America confirms that in order to prevail on claims of failure to supervise or train, a plaintiff must produce evidence that a municipal policymaker ignored complaints of misconduct. 361 F.3d at 127-28 ("proffered ample evidence" in connection with failure to supervise claim); id. at 130-31("It is *impossible to prevail* on a claim that the Town's training program was inadequate *without any evidence*....")(emphasis added). Here, it is undisputed that the plaintiff produced no such evidence. To the contrary, the complaints were investigated and discipline was imposed when the investigations concluded that it was warranted. The investigation of the complaints and the imposition of discipline mandate the entry of summary judgment in favor of Hartford and Chief Croughwell.

In Jeffes v. Barnes, 208 F.3d 49 (2d Cir. 2000), correction officers who publicly criticized alleged assaults of inmates by other officers and who assisted in a federal investigation brought a § 1983 action against a county and others, asserting First Amendment claims based on alleged retaliation. On appeal, the Second Circuit held that "the *evidence adduced by plaintiffs* suffices to present several triable issues as to the existence of a municipal policy causing

7

retaliation against plaintiffs for their exercise of their First Amendment rights to speak of the April 29, 1994 incident of inmate abuse." Id. at 62 (emphasis added).[5] Jeffes highlights the deficiencies in the plaintiff's opposition to Hartford's and Chief Croughwell's motion. For example, the Jeffes plaintiffs produced extensive and detailed evidence, including deposition testimony by policymakers, which demonstrated the policy in place, the sheriff's personal involvement, acquiescence, causation and policymaking authority. Here, the plaintiff produced no material evidence. Accordingly, summary judgment should have been entered in favor of Hartford and Chief Croughwell.

In Vann v. City of New York, 72 F.3d 1040 (2d Cir. 1995), the Second Circuit held that a material issue of fact existed as to whether the police department had shown a deliberate indifference to the need to monitor abusive police officers who had been returned to active duty. As part of its analysis, the Vann court recognized that deliberate indifference might be inferred if complaints are followed by no "meaningful attempt" on the part of the municipality to investigate or to forestall further incidents. Id. at 1049. "Deliberate indifference may also be shown through expert testimony that a practice condoned by the defendant municipality was 'contrary' to the practice of most police departments...." Id.[6]

---

5/    The Jeffes court also concluded that given the sheriff's autonomy with respect to jail operations, a major's testimony as to the daily adherence to the code of silence, and the other evidence that the sheriff himself embraced and enforced that code, a jury could permissibly find that the code of silence was a practice or custom that constituted the sheriff's and the municipality's standard operating procedure. Id. Moreover, there was ample evidence to permit a rational jury to find that the sheriff directly encouraged the acts of retaliation. Id. at 62-63.

6/    In Vann, the plaintiff presented evidence of the police department's general methods of dealing with problem policemen and of its response to past incidents involving the officer at issue. 72 F.3d at 1050 (discussing in detail deposition testimony). In sum, the Second Circuit concluded that based on the evidence, a jury could find that, where an officer had been identified by the police department as a "violent-prone" individual who had a personality disorder manifested by frequent quick-tempered demands for "respect" escalating into physical confrontations for which he always disavowed responsibility, the need to be alert for new civilian complaints filed after his reinstatement to full-duty status was obvious. Id. at 1051.

8

Here, unlike the plaintiff in Vann, the plaintiff has produced no material evidence. Moreover, she has failed to satisfy Vann's definition of "deliberate indifference." She did not introduce evidence that either Chief Croughwell or the HPD made no "meaningful attempt" to investigate complaints. Nor did she introduce expert testimony that any practice by Chief Croughwell or the HPD was contrary to the practice of most police departments. 72 F.3d at 1049. Accordingly, under Vann, summary judgment should be entered in favor of Hartford and Chief Croughwell.

The plaintiff's citation to West By and Through Norris v. Waymire, 114 F.3d 646 (7th Cir. 1997) (Posner, C.J.) is also misplaced. West was a case where a police officer allegedly intimidated a 13-year old girl into providing sexual favors. The Seventh Circuit affirmed the granting of summary judgment in favor of the town. The court recognized that municipality liability requires a "deliberate choice; an inadvertent omission won't do." Id. at 651. Although the town's conduct reflected "[s]lackness, laxness, cronyism, confusion, and dumbness," -- the risk posed by the officer was not "obvious," id. at 652, and there was no evidence that the town "intend[ed]" that the officer molest the girl. Id. Thus, even absent the "exercise of due care," the town could not be liable under § 1983. Id. Accordingly, West supports the entry of summary judgment in the instant case.[7]

## VII. THE PLAINTIFF FAILS TO RECOGNIZE THE STANDARD GOVERNING SUMMARY JUDGMENT

The deficiencies in several of the plaintiff's arguments are revealed by her repeated argument that the Court must accept her "allegations" as true and that the defendants had the

---

7/ The plaintiff's reliance on Doe v. Hillsboro Indep. Sch. Dist., 81 F.3d 1395 (5th Cir. 1996) is also misplaced. The decision is not good law. The Fifth Circuit reheard the case en banc and reversed the district court's decision denying qualified immunity. Doe v. Hillsboro Indep. Sch. Dist., 113 F.3d 1412 (5th Cir. 1997).

9

burden of producing evidence. (Pl.'s Mem. at 17-18) A review of the standard governing summary judgment confirms that the plaintiff's arguments are without merit.

In Celotex Corp. v. Catrett, 477 U.S. 317 (1986), the Court examined the standard for summary judgment under Rule 56. It recognized that the "plain language of Rule 56(c) ***mandates*** the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." Id. at 322-23 (emphasis added). The moving party only bears the initial responsibility of informing the district court of the basis for its motion, identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrates the absence of a genuine issue of material fact. Id. at 323. Thus, "as to issues on which the non-moving party bears the burden of proof, the moving party may simply point out the absence of evidence to support the non-moving party's case." Nora Beverages, Inc. v. Perrier Group of America, Inc., 164 F.3d 736, 742 (2d Cir. 1998). Accordingly, the moving party is entitled to summary judgment when the non-moving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof. Celotex, 477 U.S. at 323.

## CONCLUSION

For the foregoing reasons, and those set forth in their initial memorandum, the Court should enter summary judgment in favor of Hartford and Chief Croughwell.

Respectfully submitted,

**CO-DEFENDANTS
CITY OF HARTFORD AND
CHIEF JOSEPH CROUGHWELL**

By: _____
James J. Szerejko, Esq.
CT Fed. Bar No. 04326
**HALLORAN & SAGE LLP**
One Goodwin Square
225 Asylum Street
Hartford, CT  06103
Tel: (860) 522-6103
Fax: (860) 548-0006
E-mail: szerejko@halloran-sage.com

Their Attorney

11

## **CERTIFICATION**

This is to certify that on this 27th day of April, 2005, the foregoing was caused to be served via U.S. Mail, postpaid, to:

Wesley S. Spears, Esq.
53 Russ St.
Hartford, CT  06106

*James J. Szerejko*

675430_1.DOC