```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT
```

JANE DOE II,                        :
                                    :
        Plaintiff,                  :
                                    :
        v.                          :
                                    :
CITY OF HARTFORD,                   :
CHIEF JOSEPH CROUGHWELL,            :
DEPUTY CHIEF JEFFREY FLAHERTY,      :
LIEUTENANT DAVID KENARY,            :   CIVIL NO. 3:01cv1026 (AHN)
DETECTIVE ROBERT LAWLOR,            :
DETECTIVE TERRY BLAIR,              :
SERGEANT CHRISTOPHER LYONS,         :
SERGEANT FRANCO SANZO,              :
SALVATORE ABATEILLO,                :
MICHAEL BASILE,                     :
SALVATORE GALLO, and                :
JESUS RIVERA,                       :
                                    :
        Defendants.                 :

## RULING ON MOTION FOR RECONSIDERATION

Pending before the court is a motion for reconsideration by the defendants, the City of Hartford (the "City") and its former police chief, Joseph Croughwell ("Chief Croughwell"), seeking reconsideration of this court's January 26, 2005, denial of summary judgment on two of the plaintiff's § 1983 claims. For the following reasons, the Motion for Reconsideration [Docket #68] is granted. Upon reconsideration, the court will reexamine the issues of Chief Croughwell's supervisory liability and qualified immunity under § 1983 and the plaintiff's <u>Monell</u> claim against the City.

## STANDARD

The Second Circuit has held that a motion for

reconsideration should not be granted where the moving party seeks solely to relitigate an issue already decided.  See Shader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995).  "Such a motion generally will be denied unless the moving party can point to controlling decisions or data that the Court overlooked-- matters, in other words, that might reasonably be expected to alter the conclusion reached by the Court."  Id.

In the instant case, Chief Croughwell and the City have pointed to substantial relevant case law, i.e., Poe v. Leonard, 282 F.3d 123 (2d Cir. 2002), and Amnesty America v. Town of West Hartford, 361 F.3d 113 (2d Cir. 2004), which this court did not address in its summary judgment ruling.  Accordingly, reconsideration is warranted so that the court may consider this controlling authority.

## BACKGROUND

This case arises out of the sexual assault on the plaintiff, Jane Doe, by Hartford Police Officer Jesus Rivera.  The facts relevant to the motion are set forth in the court's summary judgment ruling and will not be repeated herein, except as necessary.

## DISCUSSION

I.  **Section 1983 Claim Against Chief Croughwell**

Chief Croughwell maintains that pursuant to the law governing supervisory liability and qualified immunity enunciated

in Poe v. Leonard, he is entitled to summary judgment on the plaintiff's § 1983 claim against him.  Upon consideration of Poe, the court agrees.

    A.   Supervisory Liability

    Pursuant to Poe, "[a] supervisor may not be held liable under § 1983 merely because his subordinate committed a constitutional tort."  Poe, 282 F.3d 123, 140 (citing Blyden v. Mancusi, 186 F.3d 252, 264 (2d Cir. 1999)).  Rather, liability, even of supervisory officials, under § 1983 requires personal involvement.  See Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995).  Personal involvement of a supervisor may be established by evidence that: (1) the official participated directly in the challenged conduct; (2) the official, after learning of a subordinate's unlawful conduct, failed to remedy the wrong; (3) the official created a policy or custom fostering the unlawful conduct; (4) the official was grossly negligent in supervising subordinates who committed unlawful acts; or (5) the official exhibited deliberate indifference to the rights of others by failing to act on information regarding the unlawful conduct of subordinates."  Colon, 58 F.3d at 873; see Hernandez v. Keane, 341 F.3d 137, 144 (2d Cir. 2003).  Additionally, there must be an affirmative link between the alleged constitutional deprivation and the act of the supervisor that caused the alleged violation.  See Poe, 282 F.3d at 140.

In Poe, the court held that a § 1983 claim against the supervisor "rest[ed] on the concept of notice". Id. Thus, to avoid summary judgment on a § 1983 claim against a supervisor, the plaintiff must show the existence of a triable issue of fact as to whether the supervisor knew or should have known that there was a high degree of risk that his subordinate would behave inappropriately, but either deliberately or recklessly disregarded the risk by failing to take action. See id. at 141-42. The court clarified that the acts of the supervisor that resulted in the violation of a plaintiff's rights must be clearly established in the "particularized context of the facts at hand". Id. at 140-41. Importantly, the court emphasized that the issue was not whether the supervisor could have done more to prevent the violation because a plaintiff could often point to what more could have been done. See id. at 146. Rather, for § 1983 supervisory liability, "the issue is whether the 'more' that [the supervisor] could have done was clearly established by law at the time he acted or failed to act so that it can be said that [the supervisor] had notice that his actions or omissions rose to the level of a constitutional violation." Id.

There is nothing in the record before the court that supports a finding that Chief Croughwell was required under clearly established law to do more than he did to prevent the alleged constitutional violation. Specifically, the plaintiff

presents no evidence that Chief Croughwell had notice of the alleged sexual assaults on prostitutes, including the plaintiff, until one of them, Stacy Richard, filed a complaint in early August 1998, or that he had any information that should have put him on notice that Officer Rivera had behaved inappropriately toward the plaintiff, or that he knew there was a high degree of risk that Officer Rivera would do so.  Rather, the evidence shows that when Chief Croughwell became aware of Richard's complaint, he commenced an investigation into the alleged unlawful conduct.  As part of that investigation, the plaintiff was interviewed on August 18, 1998, and again on December 2 and December 8, 1998.[1]  Additionally, Chief Croughwell enlisted the assistance of state and federal agencies, and as a result, five officers, including Officer Rivera, were subsequently arrested and prosecuted.

    Moreover, there is no evidence in the record to support a finding that Chief Croughwell created or condoned a policy that allowed police officers under his supervision to sexually assault prostitutes.  To the contrary, the evidence shows that, of the fourteen complaints or accusations of some type of sexual misconduct by police officers between January 1993 and December 1998, only one involved an allegation that a prostitute was

---

[1] The plaintiff was incarcerated from October 26, 1998 to November 24, 1998.  Only on December 8, 1998, did the plaintiff indicate that Officer Rivera had assaulted her on various occasions over a period of years, including as recently as late November or early December of 1998.

coerced into engaging in sexual acts under threat of arrest. When that complaint was filed, an investigator was assigned to investigate it, but the complainant refused to cooperate.

Further, there is no evidence substantiating the plaintiff's allegation that Chief Croughwell was grossly negligent in supervising subordinates, including Officer Rivera. The plaintiff's bald allegation that Chief Croughwell's supervision and training of officers must have been inadequate or she would not have been injured is insufficient as a matter of law. Indeed, it is well established that it is the plaintiff's burden to produce the evidence that can establish gross negligence or deliberate indifference. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Similarly misplaced is the plaintiff's argument that the defendants have failed to provide evidence to refute her factually unsupported charge that the investigation was halted after she was interviewed on August 18, 1998.

In sum, the court cannot conclude from the plaintiff's unsupported allegations that Chief Croughwell responded with deliberate indifference to claims that police officers under his supervision were sexually assaulting prostitutes or that he was deliberately indifferent to the plaintiff's rights. The plaintiff offers no evidence to support her assertion that the investigation he ordered was not prompt. Nor does she provide any evidence showing that a specific deficiency in the

investigation affirmatively caused the violation of her rights. Moreover, she does not submit anything to support her claim that Chief Croughwell's actions or inaction affirmatively caused her injury. The mere fact that the plaintiff was assaulted during the course of the investigation is not sufficient to attach liability to Chief Croughwell. See Poe, 282 F.3d at 140 (plaintiff must show affirmative causal link between supervisor's inaction and plaintiff's injury). While it may be that "more" could have been done to prevent her injuries in December 1998, as the plaintiff maintains, Poe teaches us that the proper inquiry is not whether "more" could have been done, but whether clearly established law required the supervisor to do more than he did. See id. at 146.

Because the plaintiff has failed to establish the essential requirements of a § 1983 claim against a supervisor and has failed to provide sufficient evidence to establish a triable issue of fact as to whether Chief Croughwell knew of should have known that there was a high degree of risk that Officer Rivera would behave inappropriately towards her but failed to take action, her claim against him based on supervisor liability cannot survive summary judgment.

B.  Qualified Immunity

The law of qualified immunity is well settled in the Second Circuit.

> Qualified immunity shields government officials from

> liability from civil damages as a result of their
> performance of discretionary functions, and serves to
> protect government officials from the burdens of
> costly, but insubstantial, lawsuits. Government actors
> performing discretionary functions are shielded from
> liability for civil damages insofar as their conduct
> does not violate clearly established statutory or
> constitutional rights of which a reasonable person
> would have known. Even where the plaintiff's federal
> rights and the scope of the official's permissible
> conduct are clearly established, the qualified immunity
> defense protects a government actor if it was
> objectively reasonable for him to believe that his
> actions were lawful at the time of the challenged act.

Lennon v. Miller, 66 F.3d 416, 420 (2d Cir. 1995) (internal citations and quotation marks omitted).

In Poe, the Second Circuit addressed the contours of the qualified immunity defense in the context of supervisory liability. Importantly, the Second Circuit clarified that the qualified immunity analysis centers on an individualized determination of the misconduct alleged: the plaintiff must show both that the law the subordinate violated and the supervisory liability doctrine were clearly established. See Poe, 282 F.3d at 134. Moreover, the plaintiff must affirmatively connect the supervisor's conduct to the subordinate's violative act or omission. See id. at 142; see also Camilo-Robles v. Hoyos, 151 F.3d 1, 7 (1st Cir. 1998). Even if a plaintiff demonstrates that a defendant violated clearly established law, a defendant is entitled to qualified immunity if a reasonable official could have believed that his actions were lawful in light of clearly established law and the circumstances confronting him. See Poe,

8

282 F.3d at 146.

In this case, the plaintiff has never identified the clearly established law that Chief Croughwell allegedly violated. Nor has she connected Chief Croughwell's conduct to the violation of her rights. Nonetheless, even if the court were to find that Chief Croughwell's conduct violated clearly established law, he would still be entitled to qualified immunity because his conduct cannot be found to be objectively unreasonable. In this regard, the evidence establishes that when Chief Croughwell was put on notice of the complaints alleging sexual misconduct by his officers against prostitutes, he commenced an investigation and enlisted the assistance of federal and state agencies. Accordingly, because Chief Corughwell's response was objectively reasonable, he is entitled to qualified immunity.

## II. Monell Claim Against The City Of Hartford

The City moves for reconsideration of the court's ruling denying its motion for summary judgment on the plaintiff's Monell claim. Upon reconsideration, the court finds that the well-settled law governing municipal liability in § 1983 actions, including the recent Second Circuit decision in Amnesty America v. Town of West Hartford, compels a different conclusion.

The Supreme Court has held that a municipality may be held liable under § 1983 for constitutional deprivations caused by the execution of a policy or custom of the municipality. See Monell v. Dep't of Social Servs. of the City of New York, 436 U.S. 658,

690-91 (1978). Consequently, municipal liability under § 1983 requires proof of three elements: (1) a policymaker; (2) an official policy; and (3) a violation of constitutional rights whose "moving force" is the policy or custom. Thus, municipal liability is limited to actions for which the municipality is actually responsible. See Pembaur v. City of Cincinnati, 475 U.S. 469, 479-80 (1986).

In City of Canton v. Harris, 489 U.S. 378 (1989), the Supreme Court addressed municipal liability for failure to train or supervise. The Supreme Court ruled that a claim for inadequate training will trigger municipal liability only where "the failure to train amounts to deliberate indifference to the rights of those with whom municipal employees will come into contact." Id. at 388. The Supreme Court explained that "deliberate indifference" requires that city policymakers make a "deliberate choice . . . from among various alternatives" not to fully train employees. Id. at 389. Such a deliberate choice could be shown where "in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacies so likely to result in the violation of constitutional rights, that the policymakers at the city can reasonably be said to have been deliberately indifferent to the need." Id. at 390.

Thus, to constitute deliberate indifference in a municipal failure to train or supervise claim, a plaintiff must show that

10

(1) a policymaker knew to a moral certainty that his or her employees will confront a given situation; (2) the situation would present employees with a difficult choice of the sort that training or supervision would make less difficult, or a history of mishandling the situation; and (3) the wrong choice by a city employee would frequently cause the deprivation of a citizen's constitutional rights.  See Walker v. City of New York, 974 F.2d 293, 297-98 (2d Cir. 1992).  Where the proper response is obvious to all without training or supervision, then the failure to train or supervise is generally not "so likely" to produce a wrong decision as to support an inference of deliberate indifference by city policymakers to the need to train or supervise.  See id. at 299-300 (applying City of Canton, 489 U.S. at 390 n.10).  However, this general rule does not follow in every case.  "While it is reasonable for city policymakers to assume their employees possess common sense, where there is a history of conduct rendering that assumption untenable, city policymakers may display deliberate indifference by doing so." Id. at 300.  Thus, if a plaintiff produces some evidence that policymakers were aware of a pattern of misconduct, but failed to institute appropriate training or supervision, the plaintiff's claim may survive summary judgment.  See id.

　　　In Amnesty America, the Second Circuit further elaborated on the elements of a failure to train or supervise claim.  There, arrestees sued the Town of West Hartford under § 1983 alleging

11

that the police used excessive force against them at two anti-abortion demonstrations. In reviewing the plaintiffs' § 1983 failure to supervise and failure to train claims against the municipality, the Second Circuit made clear that the "touchstone" of municipal liability for unconstitutional action by municipal employees is a showing that the municipality caused the violation. See Anmesty America, 361 F.3d at 125.

Thus, the Amnesty America plaintiffs could not proceed under a failure to train theory because they failed to establish any evidence of the town's training programs or advance any theory as to how the alleged training deficiencies caused the police to use excessive force. See id. at 130-31. Amnesty America recognized that City of Canton unequivocally requires plaintiffs to establish not only that the purported failure to train occurred under circumstances that could constitute deliberate indifference, but also requires plaintiffs to identify a specific deficiency in the municipality's training program and establish that the deficiency is "closely related to the ultimate injury", such that it "actually caused" the constitutional deprivation. Id. at 129. Thus, the factfinder's inferences of inadequate training and causation must be based on more than the mere fact that the misconduct occurred in the first place. See id. at 130. The plaintiff must establish that the officials consciously disregarded a risk of future violations of clearly-established constitutional rights by badly-trained employees. See id. at

127, n.8 (citations omitted).

Based on the foregoing, the plaintiff in this case must do more than merely allege that the City was deficient because it did not require gender-sensitivity training or other training that would have prevented the violation. She must offer evidence showing that the failure to provide such training caused Officer Rivera's improper conduct and that in failing to offer such training the policymakers consciously disregarded a risk that such conduct was likely to occur. See id. Moreover, under Walker, because it should be obvious to officers without training or supervision that it is inappropriate and, indeed, unlawful to sexually assault prostitutes, the plaintiff may only survive summary judgment by producing some evidence that policymakers were aware of that type of misconduct, but failed to institute appropriate training or supervision. See Walker, 974 F.2d at 300. Because she has offered no such evidence, her claim must fail on summary judgment.

Specifically, with regard to the failure to supervise claim, the plaintiff has not proffered any evidence from which a reasonable factfinder could conclude that the necessity for more supervision was glaringly obvious. See Amnesty America, 361 F.3d at 127-28. While the plaintiff now claims that she had made a complaint of sexual misconduct as early as 1994 that was never recorded or investigated, she offers nothing to substantiate this

13

assertion or show that a City policymaker was ever made aware of her complaint. See Delaware & Hudson Ry. Co. V. Conrail, 902 F.2d 174, 178 (2d Cir. 1990) ("Conclusory allegations will not suffice to create a genuine issue.")

The plaintiff has produced no evidence that the municipal policymaker's failure to investigate or rectify the unconstitutional conduct amounted to deliberate indifference to her rights. See id. at 128. The plaintiff has produced no evidence establishing that a policymaking official had notice of a potentially serious problem of unconstitutional conduct, such that the need for supervision was "obvious" and that the failure to investigate or rectify the situation was the result of a conscious choice, as opposed to mere negligence or bureaucratic inaction. See id. (noting that the operative inquiry is whether the facts suggest that a policymaker's inaction was the result of conscious choice rather than negligence). To the contrary, the evidence shows that as soon as Chief Croughwell had notice of the alleged sexual misconduct of his subordinates, he took action by instituting an investigation and eliciting state and federal assistance. That investigation led to the arrest and conviction of five officers who had committed sexual assaults on prostitutes. Further, unlike Amnesty America, the plaintiff presents no evidence that a policymaker was actually present at the scene of the constitutional violation and subsequently failed to take corrective action.

14

In sum, the plaintiff has not presented evidence that a deficiency in training or supervision caused her injury, or evidence as to what training or supervision would have prevented her injury. She simply presents no evidence to satisfy the standards articulated in Walker and Amnesty America. Thus, contrary to the court's prior ruling, the fact that other officers committed assaults is not sufficient to create a factual issue as to whether there was an informal policy that condoned such behavior. Rather, the plaintiff is required to come forward with evidence showing that official policymakers consciously ignored an obvious need for supervision. Because she has failed to do so, the plaintiff's Monell claim cannot survive summary judgment.

## CONCLUSION

For the foregoing reasons, the motion for reconsideration [doc. #68] is GRANTED. Upon reconsideration, the court vacates its earlier ruling [doc. #67] denying summary judgment on the plaintiff's § 1983 claim against Chief Croughwell (Count Three) and on her Monell claim against the City (Count Eleven) and grants summary judgment in favor of the defendants on these claims.

SO ORDERED this 15th day of August, 2005, at Bridgeport, Connecticut.

/s/_____
Alan H. Nevas
United States District Judge